Josselson, Appellant and Cross-Appellee, *v.* Josselson, Appellee and Cross-Appellant.

(Nos. 54542, 54576 and 54967—Decided November 28, 1988.)

*Donald A. Modica,* for appellant and cross-appellee.

*John F. Seelie,* for appellee and cross-appellant.

Ann McManamon, P.J. Lawyer Stanley L. Josselson ("the husband") filed a divorce action in October 1986 against his wife of twenty-four years. Marlyn Josselson ("the wife") entered her counterclaim for divorce during trial. After ten days of testimony, the trial court granted a divorce to the wife. Both parties appeal from the decree, and the husband also contests a post-judgment order disposing of his retirement investments. Because we conclude that the division of property was erroneous in several respects, we reverse the judgment in part and remand this cause for further proceedings.

We shall address the husband's six assignments of error and the wife's three cross-assignments in an order differing from the presentation of the parties.[1]

I

Initially we shall examine the procedural issues relating to the wife's counterclaim which are contained in the husband's first and second assignments of error.

In his first assignment the husband contends the lower court abused its discretion in granting the wife leave to file her counterclaim. The second assignment asserts the court prematurely heard evidence on that claim.

The husband filed for divorce on grounds of gross neglect of duty and extreme cruelty. The wife filed an answer *pro se* which denied the alleged grounds but sought no affirmative relief. At the close of the husband's case, the court granted the wife leave to file a counterclaim for alimony only on the grounds of adultery and gross neglect of duty. Her claim was to be based upon the husband's admission on cross-examination during trial that he had engaged in an adulterous affair. The court ordered the husband to respond within five days. On the following day, the wife served the husband with an amended answer which asserted a counterclaim for divorce rather than for alimony only.

---

[1] See Appendix.

Trial resumed six days after service of the counterclaim. When the wife completed her case, the court granted the husband a three-week continuance. After calling additional witnesses, the husband rested his case — forty-five days after service of the counterclaim.

If the time for amending a pleading by right has passed, a court may grant a party leave to file a counterclaim omitted through oversight, inadvertence or excusable neglect, or if justice so requires. Civ. R. 13(F). Amendment is governed by Civ. R. 15(A), see *Hoover* v. *Sumlin* (1984), 12 Ohio St. 3d 1, 4, 12 OBR 1, 4, 465 N.E. 2d 377, 379-380, fn. 4, and should be allowed "absent a finding of bad faith, undue delay or undue prejudice to the opposing party. * * *" *Id.* at 6, 12 OBR at 6, 465 N.E. 2d at 381. The court's determination will not be reversed on appeal in the absence of an abuse of discretion. *Id.* See, also, *Natl. City Bank* v. *Fleming* (1981), 2 Ohio App. 3d 50, 54, 2 OBR 57, 61, 440 N.E. 2d 590, 594.

Although the husband objected to the amendment he did not specify how he would be prejudiced in defending against it. In fact, the wife's request for a divorce was precisely the relief sought by the husband. We must presume the husband would have been equally forthright regarding his extramarital activities had the wife seasonably filed her claim. No other new issues were injected into the proceedings; the husband's own claim required him to defend his interest in the marital property and minimize any alimony award if he so desired. Since the court afforded the husband ample time to prepare his defense, we find no abuse of discretion in the ruling.

The husband cites this court's decision in *Rosenberg* v. *Gattarello* (1976), 49 Ohio App. 2d 87, 3 O.O. 3d 151, 359 N.E. 2d 467, in which a panel of this court looked to the general rules governing motions and held that a request for leave to file an untimely counterclaim must be in writing and state the grounds with particularity. The vitality of *Rosenberg* is questionable in light of *Fleming, supra,* where we upheld a similar amendment when leave had not even been requested. We need not reach this issue, however, because motions made during trial need not be in writing. Civ. R. 7(B)(1). The wife's oral request stated sufficient grounds for the court to conclude amendment was required in the interest of justice.

The husband also contends the court erred in failing to continue the trial for twenty-eight days after service of the counterclaim. Civ. R. 75(J) provides:

"No action for divorce, annulment or alimony may be heard and decided until the expiration of forty-two days after the service of process or twenty-eight days after the last publication of notice upon the complaint; nor shall any such action be heard and decided earlier than twenty-eight days after the service of a counterclaim, which under this rule may be designated a cross-complaint, unless the plaintiff files a written waiver of such twenty-eight day period."

We disagree with the wife's rejoinder that the court's action was authorized by Civ. R. 15(A), which permits a court to shorten the period for responding to an amended pleading. Civ. R. 75(J) dictates the time of hearing, not the date for response. In any event, the requirements of Rule 75 control over conflicting provisions in the other Civil Rules. Civ. R. 75(A).

Since the rule makes no distinctions based on when the counterclaim was filed, we conclude the court erred in hearing the wife's claim before the twenty-eight-day period expired. Nevertheless, we reject the husband's

argument that the waiting period is jurisdictional and requires reversal of the judgment.

In *Calvert* v. *Calvert* (1936), 130 Ohio St. 369, 4 O.O. 464, 199 N.E. 473, the trial court granted a cross-petition for divorce asserted without service on the plaintiff wife which was tried in her absence on the day it was filed. G.C. 11983, a predecessor of Civ. R. 75(J), imposed a six-week waiting period after service of a petition for divorce, but was silent on the hearing date for cross-petitions.

The Supreme Court held that the service and process provisions of the code also applied to cross-petitions. This construction was necessary, the court explained, "to afford opportunity for defense, assure a full and fair hearing, and prevent the granting of unwarranted divorces. * * *" *Id.* at 374, 4 O.O. at 466, 199 N.E. at 474. The court, however, cautioned:

"It does not necessarily follow that divorces granted on a cross-petition without process are *ipso facto* void and of no effect, for many a decree of this kind is granted upon full hearing and adequate opportunity for defense." *Id.* at 377, 4 O.O. at 467, 199 N.E. at 475.

None of the defects which undermined the *Calvert* trial is present in this case. As we noted, the court provided the husband with ample opportunity to defend against the wife's claim. In the absence of any demonstrated prejudice to the husband, the court's error does not warrant reversal of the judgment.

The husband's first and second assignments of error are not well-taken.

## II

Issues as to the determination of marital assets are raised in the husband's third assignment and the wife's first and third cross-assignments.

In the wife's first cross-assignment she contends that the marital estate should have included $56,000 which the husband admittedly withdrew from the parties' joint account over a fifteen-month period ending in November 1986. Should a spouse withdraw funds from a joint account during marriage and be unable to account for the monies at trial, the court may, in its discretion, include the funds in the marital estate. *Schwenk* v. *Schwenk* (1982), 2 Ohio App. 3d 250, 254, 2 OBR 272, 276, 441 N.E. 2d 631, 634. The adequacy of the spouse's explanation is largely a question of credibility, and thus within the purview of the fact-finder. *Id.* As with other factual determinations, the court's decision will not be overturned if it is supported by competent, credible evidence. *C.E. Morris Co.* v. *Foley Constr. Co.* (1978), 54 Ohio St. 2d 279, 8 O.O. 3d 261, 376 N.E. 2d 578.

The husband testified that some of the money may have been spent on auto parts or his son's education, and that some portion of the funds was deposited into the parties' apartment account. The husband averred that the bulk of the monies was used to purchase stock, the proceeds of which he returned to the joint account when the stocks were sold. The husband was unable, however, to document his various explanations.

While we agree the husband's account of the withdrawals is suspect, we will not substitute our judgment for that of the trial court. The husband's testimony, if believed, was competent, credible evidence explaining the whereabouts of the money. Thus, the court did not err in failing to charge the funds as a marital asset.

In her third cross-assignment, the wife argues that the court erred in determining that the husband's law practice was not a marital asset. Although the court found, and the husband does not dispute, that two bank accounts held in the law firm's name

were marital assets, the court declined to divide the remaining assets of the practice.

Stanley L. Josselson Co., L.P.A. is a sole proprietorship with seven employees. Although several other lawyers are affiliated with the office and work there on a part-time basis, the legal fees are generated primarily by the husband. The wife's expert valued the practice at $139,000, while the husband's expert opined it was worth only $45,000. Both experts included the value of the bank accounts in their estimates. The trial court expressly declined to determine the value of the practice as a marital asset but did conclude its "median" value was $95,000.

The court relied upon the Supreme Court's decision in *Stevens* v. *Stevens* (1986), 23 Ohio St. 3d 115, 23 OBR 273, 492 N.E. 2d 131. The *Stevens* court held that a professional license or degree is not marital property but is a factor which should be considered in determining an equitable award of alimony pursuant to R.C. 3105.18. The court cited two considerations. First, a degree or license is not "property" in the traditional sense of a tangible item which can be purchased or conveyed. *Id.* at 117-118, 23 OBR at 275, 492 N.E. 2d at 133. Second, the court explained that any attempt to arrive at a precise valuation and division of the degree or license would require an unacceptable amount of speculation. It would also necessitate an assumption that the degreed spouse would remain and prosper in the chosen field. If for some reason the assumption proved erroneous, the award, as a property division, would not be modifiable. *Id.* at 118, 23 OBR at 275-276, 492 N.E. 2d at 133-134.

While *Stevens* is instructive, it is not dispositive of the issue before us. The value of a law practice exists apart from the value of the professional license; an established law practice may be evaluated as any other business.

We nevertheless conclude that a spouse's solo law practice is not a marital asset. Because of ethical constraints, a law practice cannot be freely bought or sold as other property. Moreover, the inspection of client files to determine the value of work in progress or good will would pose a serious threat to confidentiality.

We hold that existing alimony principles are adequate to remedy any potential inequity. Because of restraints on alienability, the value of a solo law practice to the practitioner is primarily in its earning capacity. A party's earning ability is one of the statutory factors a court must consider in determining an award of alimony. R.C. 3105.18(B)(1). Thus, a solo attorney's former spouse may indeed share in the essential value of the law practice. Although the former spouse would likely fare better were the practice included in the marital estate, we see no inequity which would justify the potential threat to client confidentiality.

The husband contests, in his third assignment of error, the additional $25,000 in alimony the court awarded in reliance on *Stevens, supra.* The husband does not contest the wife's entitlement to an additional award, but argues only that certain language in the court's journal entry implies the court divided his law degree as a marital asset contrary to the holding of *Stevens.*

At the outset we note that the husband's argument is refuted by portions of the court's journal entry. For example, the court expressly relied upon the factors of R.C. 3105.18 and emphasized that the award should not be construed as a division of property.

Other parts of the opinion, however, tend to support the husband's

argument. After determining that the husband's law license was merged into the law practice, which was not a marital asset, the court concluded:

"It is the Court's conclusion that, where assets have been accumulated and derived from one spouse's developed professional practice, upon dissolution of the marriage the contributing and non-degreed spouse is entitled to a larger award in the division of marital assets."

This language can be read to connote restitution from a property division rather than a determination of sustenance alimony in which the professional license is only one of the factors to be considered. See *Stevens, supra,* at 119, 23 OBR at 276, 492 N.E. 2d at 134. Although we do not view the court's action as an abuse of discretion, we shall nonetheless remand this cause for the trial court to clarify the basis of the award.

Accordingly, we overrule the wife's first and third cross-assignments and sustain the husband's third assignment in part.

### III

Both parties contest various other aspects of the court's alimony award. Accordingly, we shall combine the husband's fourth assignment and the wife's second cross-assignment for disposition.

To determine the need for and amount of alimony, R.C. 3105.18(B) directs the court to consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker."

The parties were married in August 1962 and had two children: Timothy, aged twenty-five, who was enrolled in technical school and Jill, aged nineteen, who attended college at the time of the divorce.

The husband is a fifty-year-old attorney licensed to practice law in 1966. While the trial court made no findings as to the disputed extent of the husband's income, the judge characterized it as "substantial," enabling the family to enjoy a "fairly high" standard of living. In 1986, Stanley L. Josselson Co., L.P.A. generated fees of $174,000 and had a payroll of $47,000. The husband alleged he paid himself only $10,000 in 1986, and nothing in 1985, when fee income was $138,000. The wife presented an expert witness who concluded that the husband had under-reported fee income "in heroic proportions," and that the husband should personally be earning $80,000 to $100,000 per annum.

The wife, aged forty-seven, earned a bachelor's degree in education in 1962. She taught school in 1963 to 1964 while the husband was in law school, but did not thereafter pursue a career. She is blind in one eye and suffers from a debilitating condition

which threatens her remaining vision. Although she expressed interest in returning to college to update her education, her difficulty in reading for extended periods of time renders this option uncertain at best.

For the last five years of the marriage, the wife worked as a seasonal employee preparing tax returns for H & R Block. In 1986 she earned $5,100 in wages and $1,500 from a stock option plan, with no other benefits. She has the opportunity to work several days a week after the tax season, but her hourly rate of pay would be reduced from $6.78 to $4.50.

The trial court found that the parties accumulated a marital estate valued at $620,751. The wife's share of the division, approximately sixty-one percent, consisted of the following items:

| | |
|---|---|
| Marital home | $ 79,500 |
| Derbyshire Apt. | $ 87,500 |
| Grandview Apt. | $119,830 |
| Woodview Dwelling | $ 34,450 |
| Women's Federal Bank | $ 2,670 |
| Metropolitan Savings Bank | $ 5,043 |
| Life Insurance (cash value) | $ 1,240 |
| Bentley & Rolls Royce | $ 10,000 |
| Renault vehicle | $ 1,200 |
| Other automobiles | $ 3,500 |
| Furniture | $ 16,000 |
| Artwork | $ 18,700 |
| | $379,633 |

The husband received the balance of the assets:

| | |
|---|---|
| Hilton Head Condominium (one half interest) | $ 3,775 |
| Mississippi Lots | $ 100 |
| Profit Sharing Plan | $ 29,595 |
| Pension Plan | $ 38,882 |
| Keough Money Purchase Plan | $ 26,650 |
| A G Edwards Money Fund | $ 10,828 |
| Retirement Appreciation | $ 4,400 |
| Dean Witter Account (12/30/86) | $ 52,345 |
| Society National Bank L.P.A. Account | $ 40,888 |
| Ohio Savings Bank | $ 1,000 |
| Cash on hand | $ 1,500 |
| Wilson Davis | $ 3,000 |
| Alliance Capital Reserves | $ 560 |
| Miscellaneous stock | $ 1,000 |
| Rents owed on Woodview property | $ 6,400 |
| Money Fund Account | $ 10, 828 |
| 1985 Oldsmobile | $ 7,500 |
| | $241,118 |

The court awarded the wife sustenance alimony of $1,720 a month to be paid until her death or remarriage. In addition, she received a lump sum award of $25,000.

Alimony is comprised of two elements: the division of marital property and debts, and periodic payments for sustenance and support. *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, 352, 20 O.O. 3d 318, 321, 421 N.E. 2d 1293, 1295. The necessity for sustenance alimony may be determined only after the court divides the marital assets. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399, 414, 75 O.O. 2d 474, 482, 350 N.E. 2d 413, 418. Although an equal division of property should be the starting point in the court's analysis, there is no presumption of equality which controls the court's decision. *Cherry, supra,* at 355, 20 O.O. 3d at 323, 421 N.E. 2d at 1296. See, also, *Kaechele* v. *Kaechele* (1988), 35 Ohio St. 3d 93, 518 N.E. 2d 1197. The court has broad discretion in making its determination, *Wolfe, supra,* and a reviewing court will not disturb the judgment unless it reflects an attitude which is arbitrary, unreasonable or unconscionable. *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 5 OBR 481, 450 N.E. 2d 1140.

The husband contends the court abused its discretion in deciding which assets should be awarded to each party. Although we shall address the husband's contentions, we are mindful that an appellate court is not required to conduct an item-by-item review of a property division. Our appropriate in-

quiry is whether the court's disposition "resulted in a property division, which, viewed in its entirety, was an abuse of discretion." *Briganti* v. *Briganti* (1984), 9 Ohio St. 3d 220, 222, 9 OBR 529, 531, 459 N.E. 2d 896, 898. See, also, *Logan* v. *Logan* (Apr. 25, 1985), Cuyahoga App. Nos. 48833 and 48863, unreported.

The husband correctly points out that the court mentioned the A.G. Edwards money fund account, valued at $10,828, twice in the award of assets to the husband. While there is no indication this oversight affected the court's distribution of assets, we shall nonetheless remand the cause for a determination on that issue. The court should also specify the basis of the $4,400 value attributed to "retirement appreciation." The husband alleges there was no evidence of any such appreciation and the wife's appellate brief is silent on this issue. Since we are unable to determine how the court arrived at that figure from the record, clarification is in order.

The husband also complains that he was awarded $1,500 in cash he had on his person at trial. Although the husband characterized the money as a draw on his business account for auto expenses, the court was free to conclude he intended to use it for personal purposes.

The husband argues that the $6,400 in rents owed by three of the parties' tenants is "uncollectable." The husband, however, had never attempted, through legal process, to collect from the tenants, two of whom were lawyers. We hold that the husband, a lawyer himself, is more capable than the wife of recovering the money.

The husband urges that the trial court should not have treated the law practice accounts as a marital asset without deducting a pending $30,000 malpractice claim, a $9,000 tax claim and certain amounts purportedly belonging to clients. What the husband ignores, however, is that the court's decree allowed him to retain the rest of the business as well. There was evidence that the value of the other business assets far exceeded the husband's claimed malpractice, tax and trust obligations.

The husband further complains that the court deducted portions of the alimony ordered, as well as arrearages in temporary support, directly from accounts awarded to him. We reject this argument, however, since it is within a court's authority to order that a judgment be satisfied from a division of marital property. *Davis* v. *Davis* (1983), 12 Ohio App. 3d 38, 40, 12 OBR 125, 127, 465 N.E. 2d 917, 918.

We shall address the court's treatment of the husband's retirement accounts in Part V of this opinion.

Both parties characterize the court's sustenance alimony award of $1,720 per month as an abuse of discretion. The husband cites evidence that the wife was able to manage the household on a $1,250 monthly allowance provided during the marriage. However, the husband overlooks the wife's testimony that she was frequently required to supplement the allowance with her earnings from H & R Block. Moreover, the husband contributed toward other expenses, including transportation and home repairs, which the wife will have to bear herself in the future.

The wife directs us to her expense exhibit, which purported to demonstrate her need for sustenance alimony of $3,061 per month. We note that the trial court reviewed the exhibit item by item at the hearing on the wife's motion to modify temporary alimony and concluded many of the figures were overstated. While R.C. 3105.18(A)(7) requires the court to consider the standard of living attained during the marriage, there is no rigid rule entitling a spouse to the same standard after the marriage. *Kaechele, supra,* at 95, 518

N.E. 2d at 1199. Although the wife's new life will undoubtedly entail some sacrifice, we cannot say the sustenance award, considered with the property division and $25,000 lump sum, constituted an abuse of discretion.

Accordingly, we sustain the husband's fourth assignment in part and overrule the wife's second cross-assignment.

## IV

The husband's fifth assignment contends that various alleged errors, considered in their totality, violated his right to a fair trial. Since we have already addressed and rejected many of the arguments raised, we shall limit our discussion to new matters.

The husband complains he was not permitted to present evidence at the court's mid-trial hearings on the parties' motions to show cause and to modify temporary support. His argument is refuted by the record. When the husband raised this issue after the hearings ended, the court responded that the husband had made no attempt to present evidence, and had acquiesced in the court's signing of journal entries in his presence. From our review of the record we conclude the court's recollection of the proceedings is well supported.

The husband also alleges the wife never requested attorney fees as temporary alimony before the hearing. This argument too is unsupported by the record, which discloses a request by the wife on March 20, 1987—more than two months before the hearing.

We likewise conclude the court did not err in disqualifying the husband's co-counsel. On the second to last day of trial the husband retained a lawyer who was a former tenant and office associate of the trial judge before his election to the bench. When the wife expressed through counsel that she was "not comfortable" with the ar-rangement, the court excused the lawyer.

A trial court has the inherent authority to regulate the practice before it to ensure the integrity of the proceedings. *Mentor Lagoons, Inc.* v. *Rubin* (1987), 31 Ohio St. 3d 256, 259, 31 OBR 459, 462, 510 N.E. 2d 379, 381; Canons 3(A)(2) and 2(B) of the Code of Judicial Conduct. In view of the potential appearance of impropriety and the minimal prejudice to the husband, the trial court was well within its authority in excusing the lawyer.

Considering these alleged errors in the aggregate, we conclude that the court's treatment of the husband was eminently fair in all respects. This assignment fails.

## V

The husband contests provisions of the final decree and post-decree orders which required the husband's retirement accounts to be liquidated, the proceeds to be given to the wife, and any remaining assets to be placed into receivership and invested by the wife's attorney.

In his fourth assignment the husband claims the orders were an abuse of discretion. We disagree.

The court's remedies, though drastic, were warranted by the circumstances. At trial the husband threatened to close his law practice when the court announced its decision to modify the temporary alimony. The husband later presented a recommendation from his physician that he cease practicing law for six months to recover from a stress condition. The husband told the court that he had, in fact, closed his practice and would be returning files to his clients. In light of this evidence, considered with the husband's demonstrated reluctance to pay temporary support, we find no abuse of discretion in the court's order to

liquidate the accounts. Moreover, given the extreme circumstances of this case, the court acted within its authority when it ordered that any undistributed assets be placed into receivership. See *Golick* v. *Golick* (1983), 9 Ohio App. 3d 106, 9 OBR 159, 458 N.E. 2d 459.

We find merit, however, in the husband's contention that the court's order unfairly subjects him to tax penalties for the early withdrawal of his retirement contributions. Since the court entered its post-decree orders *sua sponte,* the husband had no opportunity to demonstrate potential prejudice on the record for purpose of appeal. If we assume the existence of the alleged penalties, the court's order had the effect of diminishing the value of the retirement accounts awarded to the husband, as well as his overall share of the marital estate. On remand the court should consider the reduction in value, if any, together with the adjustments we have previously discussed.

In his sixth assignment of error the husband asserts that two of the lower court's orders disposed of his pension benefits in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), Section 1001 *et seq.,* Title 29, U.S. Code. The husband cites a provision in the September 24, 1987 final decree requiring payment of the $25,000 lump sum award directly from his profit-sharing plan. The second order, issued November 19, 1987, directed certain financial institutions to liquidate all the investments held by them, including the retirement accounts.

The parties, however, apparently agree that the accounts at issue are qualified "employee benefit plans" as defined in Sections 1003 and 1051 of the Act. As such, the benefits are not subject to assignment or alienation. Section 1056(d). However, Congress created an exception for domestic relations judgments when it enacted the Retirement Equity Act of 1984. See Section 1056(d)(3), Title 29, U.S. Code. The amendment permits alienation through a "qualified domestic relations order" ("QDRO").

Section 1056(d)(3)(C) of the Act requires each QDRO to contain: (1) the name and address of the participant and alternate payee; (2) the amount of the benefits to be paid; (3) the number of payments or the period to which the order applies; and (4) the plan to which the order applies. Although the court's orders are technically deficient in that they lack the addresses of the parties, this defect is inconsequential since the husband is the plan administrator. The court's original post-decree orders, journalized November 19, 1987, were also defective in that they were directed to the financial institutions rather than the plan administrator as required by the Act. This shortcoming was cured, however, by orders entered on March 21, 1988 which required the husband to direct the payments in his capacity as administrator.

A more serious problem in the court's order is the provision requiring the complete liquidation of the retirement accounts. Section 1056(d)(3)(D) limits a court's options to those provided in the plan itself:

"(D) A domestic relations order meets the requirements of this subparagraph only if such order—

"(i) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan * * *."

Thus, the propriety of the court's orders cannot be determined without reference to the terms of the plans. Since only the A.G. Edwards plan is contained in the record on appeal, we are unable to tell whether the court's remedy complied with the Act in all respects. We have already concluded

that the trial court must reconsider its valuation of the retirement assets in light of the potential tax penalties. On remand the court should also determine whether its method of distribution is consistent with the terms of each plan and the provisions of the Act. To this extent, the husband's argument is well-taken.

Accordingly, the judgment of the trial court is reversed in part and this cause is remanded for further proceedings. On remand the court shall clarify the basis of its $25,000 lump sum award. The court shall further consider whether the notation of the A.G. Edwards account twice in the husband's award of assets resulted in his receiving a smaller share of the marital assets than the court intended. The court shall also delineate the basis for its award of "retirement appreciation." The husband shall be permitted to demonstrate the tax penalties which will possibly result from withdrawal of the retirement fund contributions. Finally, the court shall review its liquidation orders to determine, on the record, whether these orders are consistent with the terms of the benefit plans and the federal statute.

*Judgment affirmed in part, reversed in part, and cause remanded.*

J.V. CORRIGAN, J., concurs.

MARKUS, J., concurs in judgment only.

### APPENDIX

The husband's assignments of error are:

#### I

"The trial court abused its discretion in granting to appellee leave to add a counterclaim after appellant had rested his case without requiring appellee to show under Civil Rule 13(F) that her untimely failure to file the counterclaim was through oversight, inadvertence, or excusable neglect or that justice required the filing of the counterclaim."

#### II

"The trial court had no jurisdiction to hear the appellee's counterclaim until the twenty-eight (28) day waiting period mandated by Civil Rule 75(J) had expired."

#### III

"The trial court abused its discretion in awarding to appellee an additional lump sum alimony award in the amount of twenty-five thousand dollars ($25,000.00) from appellant's profit-sharing plan because this award had the effect of dividing appellant's law degree as part of the property settlement when a license to practice law is not a divisible marital asset and should not be considered by the trial court under section 3105.18(B)(9) but rather should be considered as it effects [*sic*] the other factors in Section 3105.18(B)."

#### IV

"Considering the totality of the circumstances, the trial court abused its discretion in making its alimony award to appellee."

#### V

"Appellant was denied his constitutional right to due process by the trial court in several specific respects which when taken as a whole resulted in his being denied a fair and impartial trial."

#### VI

"The trial court's order of November 19, 1987 and the portion of the final order which orders the payment of twenty-five thousand dollars ($25,000.00) to appellee out of ap-

pellant's pension plan are void as violations of ERISA in an area preempted by Federal Law."

The wife's assignments of error are:

### I

"The court erred by failing to include the $56,605.00 in unaccounted for funds as marital property."

### II

"The court's support alimony award is contrary to the manifest weight of the evidence."

### III

"The trial court erred by failing to fully include the entire value of the husband's solely owned professional corporation as a marital asset."