DECISION AND JUDGMENT ENTRY
This appeal comes to us from a divorce decree issued by the Lucas County Court of Common Pleas, Domestic Relations Division. Because we conclude that the trial court properly imputed income to appellant, properly divided and credited the parties' marital assets, properly awarded spousal support, but entered the wrong amount awarded as attorney fees, we affirm but modify the award of attorney fees.
Appellant, Richard A. Simpkins, and appellee, Karen M. Simpkins, were married in August 1975. The couple had three children: Nicole (born November 10, 1978), Craig (born December 30, 1980), and Amanda (born March 22, 1983). The parties separated when appellant left the marital residence on June 8, 1998 and went to Florida. On July 29, 1998, appellee filed for divorce.
Trial was originally scheduled for February 11, 1999, but was continued at appellant's request until February 23, 1999. At the start of trial, appellant's attorney moved the court for another continuance due to appellant's absence; the trial court denied this request.
At trial, appellee testified that appellant had been employed for approximately twenty-two years at First Energy, an electric utility company.[1] His annual income as a training supervisor at the nuclear power plant during the previous year was over $89,000.[2] Appellant was fired in early June 1998 due to his own wrongful actions.
Appellee further testified that two days after appellant was fired, he received a telephone call from a power plant in Florida. Although appellee did not actually hear the conversation, appellant later told her that the Florida plant had offered him an immediate position paying "around $80,000." According to appellee, appellant said he was not interested. Appellant stated that she also saw appellant's notes on a pad by the telephone which listed "$80,000" as the salary amount offered. Shortly after that, appellant left the marital home and went to Florida.
Appellee testified that appellant had not sent her any money since he left. She acknowledged the receipt by direct deposit of appellant's two final paychecks from First Energy in the amounts of $2,208.92 (regular) and $5,876.64 (vacation/severance). Appellee testified that, at appellant's request, she sent him $2,000 of those funds; the remainder was used to pay the family living expenses (approximately $4,700 per month as per the court's schedule). The living expenses included mortgage payments, car loans and insurance, utility bills, gasoline, food, and other necessities for herself and the two minor children who still lived at home.
Appellee works as a bank teller earning $18,000 annually. She testified that in order to pay bills she had to sell an off-road motorcycle (used by appellant) for $3,500 and her wedding ring for $2,100. Appellee testified that she also borrowed $10,000 from her mother and cashed in her 401K retirement account, receiving a net amount of $6,323.88, to pay household expenses.
Appellee also stated that since she was unable to refinance the mortgage on the marital home to reduce the payments, it became necessary to sell it. Appellee and appellant first agreed to sell the home at a listing price of $239,000. After more than six months with no offers, appellee wanted to drop the price. Appellant, however, would not agree and appellee was forced to get court authorization for the sale. Two months after dropping the price to $229,000, appellee received and accepted an offer of $215,000 for the marital home.
Over appellant's attorney's objections, a neighbor of the parties also testified. The neighbor confirmed that on the day appellant left, appellee told her about the telephone call appellant received for the job offer with the power plant in Florida. The neighbor did not recall the salary amount offered.
A pay stub, which had been filed with the court, indicated that appellant was currently working in Florida at a marina/yacht club for $81 per day. The court converted this daily rate to an annual gross salary of $21,000. No other evidence was offered by appellant.
On March 2, 1999, the court issued its final judgment entry. The trial court imputed appellant's gross annual income to be $80,000 and appellee's actual annual income to be $18,000. The court expressly found appellant to be "underemployed, and that the evidence adduced at trial proving [appellant's] recent work history, his employment potential and the offer of employment in Florida that the level of $80,000 supports these findings."
The court also made the following orders: appellee was named the residential parent and legal custodian of the minor children; appellant was required to pay extraordinary medical expenses for the children and receive visitation pursuant to local court schedule; appellee was awarded the tax exemptions for the two minor children remaining at home; and appellee was permitted to claim all mortgage interest and real estate taxes on her 1998 income tax return.
Appellee was awarded possession and ownership of her leased 1997 Acura vehicle, the parties' son's 1998 Suzuki motorcycle, and the use of the 1990 Eagle Talon. The Talon, which is titled in appellant's name, is to be transferred to the parties' son when the loan has been satisfied. Appellee was also awarded all household furniture and furnishings then in her possession, her checking account, her 401K plan, and the proceeds from the sale of the off-road motorcycle.
The court also awarded appellee one-half interest in appellant's pension benefits with First Energy, by the filing of a Qualified Domestic Relations Order. Appellee was then awarded two lump sum judgments: $14,196 representing mortgage payments and $9,847 for child support arrearages which resulted from appellant's failure to pay according to the magistrate's temporary pretrial orders during the pendency of the divorce.
Appellant was awarded his 1995 GMC pick-up, personal property in his possession or made available to him by appellee, his own checking account, and life insurance proceeds. Appellant was ordered to pay child support in the amount of $1,114.12 per month ($546.14 per child per month plus fees), attorney fees in the amount of $2,592, and court costs. Appellant was also ordered to pay his Discover Card balance of $1,500 and spousal support in the amount of $2,000 per month plus fees. The spousal support was to be paid for seven years, terminable upon either party's death or appellee's cohabitation or remarriage.
The court awarded appellee ownership of and the right to sell and convey the marital residence, but split the expected net proceeds of the sale between the parties, approximately $17,000 each. The court then, however, ordered appellant's portion to be paid to appellee to satisfy, in part, the two lump sum judgments awarded to her. The court found that even though mathematically unequal, the marital property distribution was equitable.
Appellant now appeals from that judgment, setting forth the following nine assignments of error:
 "ERROR NO. I: THE TRIAL COURT ERRED IN NOT GRANTING DEFENDANT APPELLANT A CONTINUANCE OF THE TRIAL DATE.
 "ERROR NO. II: THE TRIAL COURT ERRED IN IMPUTING INCOME OF $80,000 GROSS ANNUALLY TO DEFENDANT-APPELLANT FOR PURPOSES OF CALCULATING CHILD SUPPORT PURSUANT TO THE OHIO CHILD SUPPORT GUIDELINES AND OHIO LAW.
 "ERROR NO. III: THE TRIAL COURT ERRED IN FINDING THE DEFENDANT-APPELLANT'S OBJECTIONS TO MAGISTRATE'S DECISION WITH PERMANENT ORDER FILED ON NOVEMBER 3, 1998, NOT WELL-TAKEN AND DENIED.
 "ERROR NO. IV: THE TRIAL COURT ERRED IN AWARDING PLAINTIFF-APPELLEE SPOUSAL SUPPORT IN THE AMOUNT OF $2,000 PER MONTH AS SAID AMOUNT WAS BASED UPON IMPUTED INCOME OF $80,000 GROSS ANNUALLY TO DEFENDANT-APPELLANT CONTRARY TO THE EVIDENCE PRESENTED AND OHIO LAW.
 "ERROR NO. V: THE TRIAL COURT ERRED IN GRANTING LUMP SUM JUDGMENTS TO PLAINTIFF-APPELLEE ON TEMPORARY ORDERS WHICH WERE THE SUBJECT OF OBJECTIONS TO MAGISTRATE'S DECISION BASED UPON IMPROPERLY IMPUTED INCOME TO DEFENDANT-APPELLANT.
 "ERROR NO. VI: THE TRIAL COURT ERRED IN FINDING THAT ITS DIVISION OF MARITAL PROPERTY, WHILE NOT MATHEMATICALLY EQUAL, WAS EQUITABLE, AS SUCH FINDING WAS CONTRARY TO THE EVIDENCE AND OHIO LAW.
 "ERROR NO. VII: THE TRIAL COURT ERRED IN ITS AWARD OF ATTORNEY FEES AS THE AMOUNT IS DIFFERENT THAN THE COURT'S DECISION FILED ON 2/23/99 AND THE AWARD IS CONTRARY TO THE EVIDENCE PRESENTED AND OHIO LAW.
 "ERROR NO. VIII: THE TRIAL COURT ERRED WHEN IT DID NOT TAKE INTO ACCOUNT THE VALUE OF ITEMS SOLD BY PLAINTIFF-APPELLEE AND CASH RECEIVED BY PLAINTIFF-APPELLEE FROM DEFENDANT-APPELLANT'S EMPLOYMENT, AS MARITAL ASSETS SUBJECT TO DIVISION OR SUPPORT RECEIVED FROM DEFENDANT-APPELLEE [SIC].
 "ERROR NO. IX: THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF PLAINTIFF-APPELLEE AND HER NEIGHBOR REGARDING THE EARNING ABILITY OF DEFENDANT-APPELLANT IN FLORIDA AS SAME WAS NOT COMPETENT EVIDENCE."
 I.
Appellant, in his first assignment of error, contends that the trial court erred in not granting him a continuance.
The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. State v.Lorraine (1993), 66 Ohio St.3d 414, 423; State v. Unger (1981),67 Ohio St.2d 65, syllabus. The standard of review on appeal is, therefore, whether the trial court abused its discretion.Lorraine, supra at 424; Unger, supra at 67.
In this case, trial was held on February 23, 1999. Appellant had already been given a twelve day continuance from the first trial date set for February 11, 1999. Appellant received notice at least seven days prior to the rescheduled trial date. Furthermore, as his attorney noted, appellant had not appeared for any previous hearings or pretrials. Therefore, we cannot say that the trial court abused its discretion in denying appellant's motion for continuance.
Appellant's first assignment of error is not well-taken.
 II.
We will next address appellant's ninth assignment of error, in which he argues that the trial court erred in permitting testimony from appellant and a neighbor regarding appellant's earning ability.
Generally, the admission of evidence is within the discretion of the trial court. State v. Long (1978), 53 Ohio St.2d 91,98. A person is presumed competent to testify to those matters which are within his or her personal knowledge. See Evid.R. 601 and 602. If a witness is testifying as a lay person, his or her testimony in the form of opinions or inferences is limited to those which are "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. An out-of court statement made by a party-opponent may be offered as an admission of that party and is not hearsay. Evid.R. 801. Furthermore, an out-of-court statement which is not offered to prove the truth of the matter asserted does not constitute hearsay and is admissible at trial. See Evid.R. 801(C) and 802.
In this case, appellee testified regarding an offer of employment made to appellant which took place two days after he was fired from his job with First Energy. Appellee testified as to statements made to her by appellant regarding this communication, including his rejection of and the written notes he himself had made as to the details of the offer. In other words, appellee related a party-opponent's admissions which she had personally heard or seen. Therefore, we conclude that appellee was competent to testify that appellant had received another job offer and appellant's statements made to her, as admissions of a party-opponent, were not hearsay.
Appellee's neighbor who testified regarding her previous conversation with appellee about the job offer, testified from personal observation of appellee. In our view, the neighbor's testimony was simply offered to show that appellee was not fabricating her testimony at trial. Consequently, the neighbor's testimony, which was not offered to prove the truth of the matter asserted, was not hearsay. Therefore, the trial court did not abuse its discretion in admitting appellant's or the neighbor's testimony regarding appellant's job offer in Florida.
Accordingly, appellant's ninth assignment of error is not well-taken.
 III.
We will address appellant's second and fourth assignments of error together. Appellant, in his second assignment of error, argues that the award of child support was improperly based upon the imputed income determined by the court. In his fourth assignment of error, appellant claims that the spousal support award was improperly based upon that same imputed income.
The obligation of a biological parent to provide for the care and support of his or her minor child is not a permissive obligation; it is mandated by law. See R.C. 3103(A) and 3109.05;Blum v. Blum (1967), 9 Ohio St.2d 92, 94. Where a parent is voluntarily underemployed, the trial court may impute income based upon what the parent would have earned if fully employed as related to the parent's employment and earnings history, the parent's education and occupational qualifications, and the job opportunities in the community. R.C. 3113.215(5)(a). See, also, Rock v. Cabral (1993), 67 Ohio St.3d 108, 111. Determining whether a parent is voluntarily underemployed is a question of fact for the trial court and will not be reversed absent an abuse of discretion. Rock v. Cabral, supra, at 112. A "parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." Id. at 111.
In this case, the court specifically found that appellant was voluntarily underemployed. At the time of the divorce hearing, appellant was working at a marina in Florida, allegedly earning only $21,000 per year. However, it is undisputed that in the previous year, appellant earned almost $90,000 per year as a training supervisor at a nuclear power plant. Appellant lost that job due to his own wrong-doing.
Appellant failed to present any evidence that he was no longer capable of finding employment at his former income level. Appellant's being fired due to his own misdeeds does not excuse him from the responsibility of supporting his child or former spouse based upon his income potential. Based upon undisputed information presented by appellee, the trial court limited the amount of imputed income to $80,000. In fact, the record shows that appellant is capable of earning an even greater yearly income than the amount imputed by the court. Therefore, since the determination was supported by the record, we cannot say that the trial court abused its discretion when it imputed income to appellant in the amount of $80,000.
Additionally, the amount of child support is set by statute and must be awarded as set out in the child support guidelines. See R.C. 3113.215. Consequently, the child support awarded by the trial court based upon imputed income was proper.
As for the issue of spousal support, the factors which must be considered by the trial court are provided in R.C. 3105.18(C)(1).[3]
The purpose of spousal support is to provide for the financial needs of the ex-spouse. R.C. 3105.18(A); Moell v. Moell (1994),98 Ohio App.3d 748, 751. When determining spousal support, the trial court has broad discretion.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; Cherry v. Cherry
(1981), 66 Ohio St.2d 348, 355. After considering a totality of the circumstances, a reviewing court may not substitute its judgment for that of the trial court, absent an abuse of discretion. Kunkle, supra; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. An abuse of discretion "connotes more than a mere error of law; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
In this case, the record shows that the trial court considered the required statutory factors. Appellant formerly earned almost $90,000, and was offered another job in his field at nearly the same income, but turned it down. He offered no evidence of any attempt to find comparable employment. Appellant has had extensive education and training beyond high school which qualified him for his former position as a training supervisor at the nuclear power plant. Appellant, aged forty-five at the time of trial, is in apparent good health.
Appellee, on the other hand, has limited earning potential. Appellee, a high school graduate, worked as a bank teller grossing $18,000 per year — her highest earning capacity to date. The twenty-two year marriage was of substantial duration and involved a fairly comfortable standard of living, including vacations and recreational activities with the children. While appellant has a pension fund; appellee cashed in her 401K fund to pay household bills during the pendency of the divorce. Appellant also failed to contribute any financial support to his children or the household during the pendency of the divorce. Therefore, we conclude that the trial court properly considered the required factors and did not abuse its discretion in its award of spousal support.
Accordingly, appellant's second and fourth assignments of error are not well-taken.
 III.
Appellant, in his third assignment of error, claims that the trial court erred in denying appellant's objections to the magistrate's decision which found appellant to be underemployed. Based upon our discussion of appellant's second and fourth assignments of error, we find appellant's argument to be without merit.
Appellant's third assignment of error is not well-taken.
 IV.
Appellant, in his fifth assignment of error, contends that the trial court erred in granting lump sum judgments to appellee because the amounts were based upon the temporary orders issued by the magistrate which were again based upon improperly imputed income. Appellant argues that the filing of objections automatically stayed the magistrate's order and that the trial court's delay in ruling on the objections caused the accrual of the arrearages on child support, resulting in the lump sum judgments. Appellant's argument is without merit.
Unless otherwise specified in the order of reference, a magistrate's orders in a divorce proceeding pursuant to Civ.R. 75(N), i.e. pretrial child support and other temporary orders, may be entered without judicial approval. Civ.R. 53(C)(3)(a). Thus, the Civ.R. 53(E) procedures for filing objections to a magistrate's decision do not apply to such temporary pretrial orders. See State ex rel. Thompson v. Spon (1998), 83 Ohio St.3d 551
[Civ.R. 53(E) requirements also inapplicable to temporary pretrial orders issued by magistrates pursuant to Civ.R. 75(M) regarding the care of children during the pendency of a divorce action].
To appeal such a pretrial order, Civ.R. 53(C)(3)(b) provides that:
 "Any person may appeal to the court from any order of a magistrate entered under division (C)(3)(a) of this rule by filing a motion to set the order aside, stating the party's objections with particularity. The motion shall be filed no later than ten days after the magistrate's order is entered. The pendency of a motion to set aside does not stay the effectiveness of the magistrate's order unless the magistrate or the court grants a stay." (Emphasis added.)
Civ.R. 75(N)(2) also states that a request for oral hearing in response to a temporary order for support, "shall not suspend or delay the commencement of spousal support or other support payments previously ordered or change the allocation of parental rights and responsibilities until the order is modified by journal entry after the oral hearing."
In this case, the magistrate's initial decision for child support and payment of the mortgages issued on September 14, 1998 was a temporary pretrial order entered pursuant to Civ.R. 75(N). As such, it was not subject to judicial approval. See Civ.R. 53(3)(a). Appellant moved for and received a hearing pursuant to the procedures for appeal of such pretrial orders provided in Civ.R. 53(C)(3)(b). Nevertheless, the next judgment entry, dated November 3, 1998, is entitled "Magistrate's Decision With Permanent Order" and is signed by both the magistrate and the trial court judge. This entry also includes a notice that "Objections must be filed pursuant to Civil Rule 53(E)(3) and Local Rule 7.14." It is from this judgment that appellant filed his objections.
We note that although the trial court signed the November 3, 1998 order and treated the order as if it were a Civ.R. 53(E) decision, this was procedurally incorrect. Regardless of the "Permanent Order" designation by the trial court, the order entered by the magistrate was, in fact, a temporary, interlocutory, pretrial order pursuant to Civ.R. 75(N) which needed no approval by the trial court.[4] Consequently, there is no provision for the filing of objections and the automatic stay provision of Civ.R. 53(E) does not apply. Appellant suffered no prejudice, however, since he never asked for a stay on the initial September 1998 order and was afforded a complete review and appeal of the temporary orders by virtue of the subsequent hearing and decision of the magistrate. The arrearages occurred as a direct result of appellant's failure to pay marital debts and meet his responsibilities to his children. Therefore, we conclude that the trial court did not err in granting lump sum judgments based upon the magistrate's temporary pretrial orders.
Accordingly, appellant's fifth assignment of error is not well-taken.
 V.
In his sixth and eighth assignments of error, appellant argues that the trial court erred in its division and award of marital property because it failed to equally divide the property and to properly credit appellant for marital assets.
Generally, marital property is to be divided on an equitable basis. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. Property which has been acquired during the marriage is considered to be marital. R.C. 3105.171(A)(3)(a)(i). Marital funds which were used to pay marital obligations may be excluded when computing the amounts of marital assets. See Josselson v.Josselson (1988), 52 Ohio App.3d 60, 62.
In this case, appellant argues that the trial court erred in failing to include appellant's last two paychecks from First Energy and the proceeds from the sale of an off-road motorcycle, a diamond wedding ring, and the liquidation of appellant's 401K plan as credits against his temporary support obligations. The two paychecks paid in June represented income earned prior to the parties' separation. They were applied to marital debts accruing during June, July and August 1998, and were, thus, not applicable to the support orders which became effective in September 1998. In addition, the record contains no evidence to support a finding that appellant retained any interest in appellee's wedding ring purchased solely for her. See R.C.3105.171(A)(6)(a)(vii); Barkley v. Barkley (1997), 119 Ohio App.3d 155,168-169. Thus, in our view, it was a gift and is not marital property.
However, even presuming arguendo that those and the remaining items were marital property, the record indicates that the proceeds were spent to pay marital debts, i.e. mortgage payments, maintenance, and child support beginning in June 1998 when the parties separated. Appellee paid the marital obligations for June, July, and August, incurring additional debt of $10,000 borrowed from her mother as a result of appellant's failure to pay support. Appellant withdrew $2,500 from the marital checking account when he left for Florida and appellee later sent him another $2,000 from the paychecks. Since appellant contributed nothing financially to the marital home from the September order through February 1999, we conclude that the trial court did not abuse its discretion in excluding the proceeds from the noted items from distributions of marital property or for not crediting them against his support obligations for that time period.
Appellant also contends that the division was unfair because he was ordered to pay the $10,000 loan to appellee's mother and he should not have had to give up his proceeds from the sale of the home. First, the record reveals that the final judgment entry orders "Plaintiff" to pay the loan, which specifically contradicts appellant's contention regarding his obligation to pay such debt.
Furthermore, we note that a consent judgment entry filed on February 12, 1999 and approved by attorneys for both parties determined that $4,000 from the sale of the home would be held for further distribution and that the "balance of the sale shall become the sole property of plaintiff, Karen M. Simpkins." Thus, pursuant to that agreement, appellee should have received $30,000 of the total expected proceeds ($34,000) from the sale of the home. Nevertheless, the trial court gave appellant a credit for $17,000, one-half of the expected proceeds from the marital home, against the lump sum judgments. Appellee made no objection to this determination, so we decline to disturb the trial court's decision to credit appellant with a larger share of the proceeds. Therefore, the trial court did not abuse its discretion in the "mathematically unequal," but equitable division of the marital property.
Accordingly, appellant's sixth and eighth assignments of error are not well-taken.
 VI.
Appellant, in his seventh assignment of error, contends that the award of attorney fees was unreasonable and that the award granted at trial does not match that indicated in the court's judgment entry. Appellee concedes that the proper amount of attorney fees should be $2,500 as awarded by the court during trial, not $2,592 as stated in the judgment entry.
R.C. 3105.18(H) permits an award of reasonable attorney fees if the court:
 "determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
The decision to award attorney fees is within the sound discretion of the trial court, and this court will not reverse this decision absent an abuse of that discretion. Rand v. Rand (1985),18 Ohio St.3d 356, 359. Evidence must be presented which demonstrates the reasonable value of the actual services performed before awarding attorney fees. Farley v. Farley (1994), 97 Ohio App.3d 351, 355. The court may also award attorney fees based upon imputed income of the party. See Schmuhl v. Schmuhl (Feb. 15, 1996), Cuyahoga App. No. 68897, unreported.
For the same reasons discussed in appellant's second and fourth assignments of error, we conclude that the trial court's award of attorney fees based upon appellant's imputed income was proper and reasonable. The facts and circumstances of this case, including the disparity in incomes of the parties, support a finding that appellee would be prevented from fully litigating her rights and adequately protecting her interest without such an award. Appellee also presented a billing statement for $3,500, to document the reasonableness of the attorney fees incurred; appellee was awarded only $2,500 of that amount. Therefore, we cannot say that the trial court abused its discretion by ordering appellant to contribute to the appellee's attorney fees. However, we agree that the disparity in the judgment entry should be corrected to indicate "$2,500" as the correct amount awarded for attorney fees by the court during trial.
Accordingly, appellant's seventh assignment of error is well-taken in part, as it pertains to the correction of the judgment entry for the amount of attorney fees awarded. Pursuant to App.R. 12(B), we modify the award of attorney fees to be $2,500.
The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division is affirmed but modified as to the amount of attorney fees as noted. Court costs of this appeal are assessed to appellant.
 _____________________ Peter M. Handwork, J.
James R. Sherck, J., Richard W. Knepper, P.J., Concur.
[1] First Energy was also a defendant in the divorce action but is not a party to this appeal.
[2] Various exhibits, including previous year's joint tax returns were admitted into evidence to corroborate the parties' incomes.
[3] R.C. 3105.18(C)(1) provides that the court must consider the following factors when determining whether to award spousal support and, if so, the amount:
 "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 * * * of the Revised Code;
"(b) The relative earning abilities of the parties;
 "(c) The ages and physical, mental, and emotional conditions of the parties;
"(d) The retirement benefits of the parties;
"(e) The duration of the marriage;
 "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 "(g) The standard of living of the parties established during the marriage;
"(h) The relative extent of education of the parties;
 "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 "(l) The tax consequences, for each party, of an award of spousal support;
 "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 "(n) Any other factor that the court expressly finds to be relevant and equitable."
[4] When issuing decisions pertaining to Civ.R. 53(C)(3) pretrial orders which do not require judicial approval, we urge trial courts to avoid the designation of "Permanent Order" and to remove the notice and instructions for appeal "pursuant to Civ.R. 53(E)."