FROST, Appellee,

v.

FROST, Appellant.

[Cite as *Frost v. Frost* (1992), 84 Ohio App.3d 699.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–370.

Decided Dec. 29, 1992.

700

*Luper, Wolinetz, Sheriff & Neidenthal* and *Barry H. Wolinetz,* for appellee.

*Jeffrey A. Grossman Co., Jeffrey A. Grossman* and *Anthony R. Auten,* for appellant.

JOHN C. YOUNG, Presiding Judge.

This matter is before this court upon the appeal of Robert E. Frost, appellant, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations. Appellant and appellee, Jeannie Frost, were married in 1974 and subsequently a daughter, Erin (d.o.b. July 7, 1975), and a son, Peter (d.o.b. April 21, 1979), were born to them. After seventeen years of marriage, appellee filed for divorce. Thereafter, the parties submitted an agreed entry, dated September 13, 1990, giving "temporary permanent custody" of Erin to appellee and "temporary and permanent custody" of Peter to appellant. On January 14, 1991, appellee filed a motion requesting a change of custody for the parties' son, Peter. Thereafter, in April 1991, appellee filed a motion for shared parenting. In May 1991, the trial court heard evidence on the issues of divorce and custody.

At the hearing, testimony was submitted from the court-appointed psychologist, Dr. Meers, Peter's guardian *ad litem*, Marcia Zand, the plaintiff's adult daughter from a former marriage, and the parties themselves. The trial court also met with each child *in camera* to learn his or her wishes, respectively, as to custody. The court-appointed psychologist stated that, due to Peter's severe behavioral problems, he recommended that custody of Peter remain with the appellant on the basis that appellant was better able to provide a structured environment and discipline for Peter at this point in Peter's life. It was Dr. Meers' opinion that appellee's emotional problems prevented appellee from providing Peter with a structured environment and the discipline he needed to facilitate his own behavioral problems.

The trial court concluded in its August 12, 1991 judgment entry that both parties were entitled to a divorce and granted legal custody of both children to the wife. However, the trial court did not set forth a visitation schedule for the children with appellant, and reserved decision on that matter until the trial court was further advised by the court-appointed psychologist.

The remaining issues of child support, property division and spousal support were introduced at trial on November 12 and November 13, 1991. Appellant is self-employed and is the principal attorney in the law firm known as "Robert Frost & Associates." His 1990 income tax form reflected income of $151,090. The record also reflects that his 1991 income at the time of trial in November 1991, as of October 31, was $92,000, and that appellant's law firm has assets in excess of $200,000. Appellant's premarital assets included cash, which he contributed as a $20,000 down payment to the purchase of the marital residence. Other premarital assets of appellant included a life insurance policy valued at $2,388.

Prior to her 1974 marriage to appellant, appellee was employed as a medical researcher. She has since been a homemaker and primary caretaker of the children, and has not been employed outside the home since the time she married appellant in 1974. Appellee is a manic depressive and, thus, suffers from periods of depression. Although the court-appointed psychologist testified that both parents were in the "normal range," the record reflects that appellee copes with a borderline personality disorder. Because of her emotional difficulties, the record also reflects that appellee is not capable of sustaining full-time or part-time employment at present. The testimony of Dr. Meers also reflects that appellant was not capable of giving Peter the love or affection which he needed. Although Dr. Meers' testimony appeared to be conflicting at times, it was his ultimate recommendation that it was in Peter's best interest to be permanently placed in the custody of his father. At the time the divorce was filed, Peter expressed his desire to live with his father. Appellee agreed to this arrangement because of

the severe problems she was experiencing in disciplining Peter. A few months later, Peter expressed his desire to return to live with his mother and sister because, he claimed, he hated his father.

The parties stipulated the values of certain assets, including bank accounts, $152,715 in bonds, $390,093 in retirement accounts, $495,278 in life insurance policies, $43,983 in stocks, and two automobiles, a $21,000 Mercedes and a $3,375 Oldsmobile, to be worth approximately $1,100,000. The marital residence was appraised in excess of $300,000 and is not encumbered by a mortgage. The trial court fixed the amount of $325,000 as the fair market value of the house. The family enjoyed an "above average" standard of living that included membership privileges at the Scioto Country Club, vacations, riding lessons, expensive clothes, dining out, and athletic events, among other things. In its February 20, 1992 journal entry, the trial court ordered appellant to pay child support in the amount of $825 per child, spousal support in the amount of $3,000 per month (to be reevaluated in May 1997), and a lump sum payment of $35,000 for attorney fees. The marital property was evaluated and distributed as follows:

| "To Mrs. Frost | | To Mr. Frost | |
|---|---|---|---|
| | | Frost & Assoc. | |
| "residence ** | $325,000 | (Profit-sharing) | $476,606 |
| "Oldsmobile | 3,375 | Mercedes | 21,000 |
| "all stock ** | 2,801 | Metropolitan Life Ins. | 43,983 |
| "11 cash accounts | | | |
| (per Jt. A) ** | 77,328 | his I.R.A. | 13,825 |
| "all bonds ** | 390,093 | Vanguard acct. | 75,387 |
| "her I.R.A. | 4,847 | cash, from excess in firm * | 191,300 |
| | | | |
| "cash, from excess | | | |
| (in firm) * | 18,700 | | |
| Total | $822,144 | Total | $822,101 |

" * represent 'distributive awards' per R.C. 3105.171(A)(1) and (E)(1), (2)
" ** *Defendant to convey his interest therein to plaintiff within thirty (30) days of the date of this order."* (Emphasis *sic.*)

---

After the trial court issued its February 20, 1992 judgment entry, appellant filed a motion for a new trial, which was overruled. Appellant filed a timely appeal and now asserts the following fifteen assignments of error as a result of the trial court's August 16, 1991, February 20, 1992, and March 11, 1992 judgment entries:

"Assignment of Error No. 1:

"The trial court abused its discretion and made a decision against the manifest weight of the evidence when it designated the appellee wife as residential parent and legal custodian for the parties' son.

"Assignment of Error No. 2:

"The trial court abused its discretion by allowing the child's guardian ad litem to serve also as the child's attorney when there was an obvious conflict between these two roles; and further to call the guardian ad litem/attorney as a witness without any notice to the parties.

"Assignment of Error No. 3:

"The trial court abused its discretion by entering a determination of custody when the court's predecessor, in these same proceedings, already journalized an agreed entry between the parties as to permanent custody of Peter Frost.

"Assignment of Error No. 4:

"The trial court abused its discretion and made a decision against the manifest weight of the evidence in failing to award specific visitation to the appellant, effectively terminating visitation between the appellant and the children.

"Assignment of Error No. 5:

"The trial court abused its discretion and made a decision against the manifest weight of the evidence in ordering a child support obligation contrary to the Ohio child support guidelines and by failing to consider the income available to the appellee and the children.

"Assignment of Error No. 6:

"The trial court abused its discretion and decided against the weight of the evidence by using stale evidence in its determination of the appellant's income for purposes of a child support obligation.

"Assignment of Error No. 7:

"The trial court abused its discretion and decided against the manifest weight of the evidence by failing to award an equal or equitable property division.

"Assignment of Error No. 8:

"The trial court abused its discretion and decided against the manifest weight of the evidence by failing to properly and fully consider the differing tax consequences between assets on which taxes have already been paid versus assets on which the payment of taxes has been deferred.

"Assignment of Error No. 9:

"The trial court abused its discretion and decided against the manifest weight of the evidence by finding that the husband had $210,000.00 in separate property available for use as a 'distributive award' when a large portion of these funds were [sic] being held in trust for third-party clients or being held for operating expenses of his law firm.

"Assignment of Error No. 10:

"The trial court abused its discretion and decided against the manifest weight of the evidence by dividing the husband's separate property as though it were marital property and erroneously labeling such division as a 'distributive award' and further erred in holding that any distributive award was needed to make an equal or equitable property division award.

"Assignment of Error No. 11:

"The trial court abused its discretion and decided against the weight of the evidence by awarding the appellee additional sums for spousal support when she has the ability to be self-supporting; and by refusing to consider the investment and passive income of the appellee.

"Assignment of Error No. 12:

"The trial court abused its discretion and decided against the weight of the evidence by failing to fix a date certain for the termination of any award of spousal support and reserving jurisdiction to review the spousal support award after five years.

"Assignment of Error No. 13:

"The trial court abused its discretion and decided against the weight of the evidence by using stale evidence in its determination of the appellant's income for purposes of a spousal support obligation.

"Assignment of Error No. 14:

"The trial court abused its discretion and decided against the weight of the evidence by awarding the appellee additional sums for attorney fees when she has sufficient funds of her own for such expense.

"Assignment of Error No. 15:

"The trial court abused its discretion and decided against the manifest weight of the evidence by refusing to fully acknowledge the appellant's pre-marital assets."

In the first and third assignments of error, appellant asserts that the trial court erred when it awarded legal custody of the parties' son to appellee when the prior September 12, 1990 agreed entry awarded temporary and permanent custody of the parties' son to appellant. The September 12, 1990 agreed entry states as follows, in pertinent part:

"Upon application and for good cause shown, the Court finds that the parties have reached an agreement with regard to both temporary and permanent custody of the parties minor children.

"* * * *

"It is further AGREED and therefore ORDERED that custody of Peter shall be awarded to the Defendant subject to the Plaintiff being awarded reasonable visitation."

In January 1991, appellee filed a motion for a change of custody so that Peter could come live with her.

Thereafter, on April 19, 1991, appellee filed a motion for shared parenting, pursuant to the newly enacted version of R.C. 3109.04, which became effective April 11, 1991. The issue of custody was addressed by the trial court at the May 1991 hearings. In its August 1991 judgment entry, the trial court issued the following order, in relevant part:

"It is further ORDERED, ADJUDGED, AND DECREED after considering the factors set forth in Section 3109.04 of the Ohio Revised Code, and the best interests of the children, that the Plaintiff shall be the residential parent and the legal custodian of the minor children, Erin and Peter, subject to the following:

"1) As a condition of custody and visitation, the family shall remain in counseling with Dr. Jerome Meers until such time as Dr. Meers feels that it is no longer necessary or that Dr. Meers feels he can no longer continue effectively in a counseling role. In the event Dr. Meers determines that he can no longer continue as counselor, the family shall commence counseling with a substitute professional psychologist.

"2) At such time that the Court is advised by Dr. Meers, or substitute counselor, that it is in the children's best interests to commence visitation with the Defendant, the Court will set a specific visitation schedule.

"3) That the Defendant shall have telephone access to the children until such time as visitation commences.

"4) That his Order is subject to the continuing jurisdiction of the Court.

"IT IS further ORDERED that the Defendant shall maintain medical and major medical insurance for the benefit of the minor children, and the Defendant shall pay all extra ordinary medical, dental, optical, orthodontia, and prescription drug expenses for the minor children. The Plaintiff shall pay all ordinary uninsured medical expenses for the minor children.

"It is further ORDERED that the expenses associated with family counseling with Dr. Meers, or his replacement, as outlined above shall be submitted to Defendant's insurer, and any uncovered expenses will be divided equally between the parties for payment.

"It is further ORDERED that for so long as Defendant's child support obligation is current as of December 31st of every year, Defendant shall be

entitled to claim the children as his dependents for purposes of federal and state income taxes for that year.

"It is further ORDERED that temporary child support and spousal support orders shall remain in effect until further order of the Court.

"It is further ORDERED that the remaining issues of child support, spousal support and property division shall be continued for further trial. All temporary orders, not herein specifically modified, shall remain in full force and effect.

"It is agreed by the parties, and hereby ORDERED by the Court, that this Judgment Entry is intended to grant a divorce and permanent custody only in order to facilitate the situation involving the children, and as such, it is not a final appealable order."

Upon review, it is important to first determine the effect of the September 12, 1990 agreed entry. The parties agreed that temporary and permanent custody of Erin would be awarded to appellee and that temporary and permanent custody of Peter would be awarded to appellant. However, the effect of this entry is interlocutory in nature since the agreement had not become integrated as part of the final decree of divorce. For instance, if the proceedings were to be dismissed, the parties failed to proceed to a final decree of divorce, or if the parties reconciled, they would not be bound by an agreed entry similar to the circumstances herein.

On January 14, 1991, appellee filed a motion for a change of Peter's custody, asserting there had been a change of circumstances. The law at that time under former R.C. 3109.04 provided for a change of custody when the trial court found that a change in the circumstances of the child had occurred.

However, R.C. 3109.04(B)(1), as formerly enacted, applied only under circumstances where a party sought to modify a prior custody decree. Under the facts of this case, a final order of custody had not as yet been decreed. Thus, even though the parties had entered into the September 12, 1990 agreed entry, the trial court was compelled to make its decision concerning custody according to the "best interests of the child" standard and was within its discretion to accept, reject or modify the parties' agreement.

The facts in this case became further complicated when appellee filed a "MOTION FOR SHARED PARENTING" on April 19, 1991 pursuant to newly enacted R.C. 3109.041, which became effective on April 11, 1991. Neither party contends that newly enacted R.C. 3109.041 was not applicable to proceedings pending at the time it was enacted. When considering the effect of R.C. 3109.041, it is not likely that the legislature intended to exclude pending matters. R.C. 3109.041 provides:

"(A) Parties to any custody decree issued pursuant to section 3109.04 of the Revised Code prior to the effective date of this amendment may file a motion with the court that issued the decree requesting the issuance of a shared parenting decree in accordance with division (G) of section 3109.04 of the Revised Code. Upon the filing of the motion, the court shall determine whether to grant the parents shared rights and responsibilities for the care of the children in accordance with divisions (A), (D)(1), and (E)(1) of section 3109.04 of the Revised Code."

██ Dr. Meers, the court-appointed psychologist, recommended that the custody of the parties' son be awarded to appellant. The basis for Dr. Meers' ultimate decision was the continuation of a structured environment and consistent discipline that appellant could provide for Peter. Although Dr. Meers' testimony included reasons which negatively impacted on awarding the custody of Peter to either parent, his ultimate recommendation was that Peter be placed with his father. Since the trial court, within its discretion, rejected the psychologist's recommendation, the impact of the psychologist's testimony became a nullity and not a matter of "manifest weight of the evidence" as set forth in the briefs of each party. The trial court was within its discretion to disregard the psychologist's recommendation and base its decision on other evidence.

However, there is no indication in the record that the trial court considered R.C. 3109.041 and rejected the shared-parenting plan proposed by appellee in her motion. Furthermore, there is no finding of fact, expressed as such in the trial court's decision, that anything equivalent to a "change of circumstances" existed to warrant the change of Peter's custody from appellant to appellee.

██ Accordingly, as to the issue of custody, the trial court erred when it did not consider appellee's motion and proposed plan for the shared parenting of the parties' son pursuant to R.C. 3109.041. Without any indication from the trial court that this proposal was considered and rejected, the matter of the custody of the parties' son must be remanded for further proceedings in accordance with R.C. 3109.041. Accordingly, appellant's first and third assignments of error are well taken and are sustained.

In the second assignment of error, the appellant asserts that the trial court abused its discretion by having the child's guardian *ad litem* serve as his attorney, and at the trial court's request offer witness testimony, without any prior notice to the parties. Since the issue of Peter's custody is being remanded to the trial court, this court finds this issue as moot by virtue of App.R. 12(A)(1)(c).

It should be noted, however, that the propriety of the trial court's calling on the guardian *ad litem* to testify in this matter is a complex issue. Foremost, it is the

function of the guardian *ad litem,* in this instance, to serve the best interests of the child. By being required by the trial court to testify against the better judgment of the guardian *ad litem* herself and counsel for both parties, it appears that the trial court ventured into the "gray area" of compromising her function as a guardian *ad litem.* Thus, since the issue of Peter's custody could be resolved without the guardian *ad litem* 's testimony, it may be prudent, on remand, for the trial court to avoid the impropriety of her testifying. Accordingly, appellant's second assignment of error is not well taken and is overruled.

In the fourth assignment of error, appellant asserts that the trial court erred in terminating visitation between him and his children. In light of this court's disposition of appellant's first and third assignments of error, the issue of visitation in regard to Peter will be remanded and should be reconsidered when the issue of Peter's custody is determined pursuant to R.C. 3109.041. As to the issue of visitation with Erin, the parties' daughter, the parties' agreed entry of September 12, 1990 reflects "that custody of Erin be awarded to the Plaintiff subject to the Defendant being awarded reasonable visitation."

■ At the May 1991 hearings, Erin's custody was not contested; only Peter's custody was contested. Thus, there was no evidence upon which the trial court could deny reasonable visitation of appellant with either child, pursuant to R.C. 3109.051 and the evidence as presented. Although the trial court did not expressly deny visitation with Erin, in effect, by postponing any resolution of this issue, it did deny visitation. Furthermore, since neither party filed a pleading or motion requesting shared parenting of their daughter pursuant to R.C. 3109.041, it was improper for the trial court not to set forth a visitation schedule between appellant and his daughter. See R.C. 3109.04(A)(1). Accordingly, appellant's fourth assignment of error is well taken and is sustained.

■ In the fifth assignment of error, the appellant asserts that the trial court's child support order was contrary to the Ohio Child Support Guidelines. Since the issue of Peter's custody has been remanded to the trial court, the issue of child support will be reconsidered pursuant to R.C. 3109.05 once the trial court has complied with R.C. 3109.041. However, it is important to note upon remand that the trial court is required to consider the financial resources and the earning ability of the child. See R.C. 3109.05. Thus, in this instance, the trial court must consider the interest income earned on each child's accumulated assets. The testimony showed that each child had a savings account in excess of $100,000, which was established for later use for educational purposes. Pursuant to the mandates of R.C. 3109.05(A)(1)(a), these assets are to be considered in the calculation of child support. Accordingly, since appellant's fifth assignment of

error has been rendered moot by virtue of this court's disposition of appellant's first and third assignments of error, appellant's fifth assignment of error is not well taken and is overruled. See App.R. 12(A).

In the sixth assignment of error, appellant asserts that the trial court used stale evidence in its determination of appellant's income for purposes of calculating child support. However, in light of this court's disposition of appellant's first and third assignments of error, the issue of Peter's custody is being remanded to the trial court and support will have to be determined at that time. Since the issue of child support is dependent upon the ultimate resolution of Peter's custody, the issue of child support may have to be reconsidered. However, since the parties' combined gross income is in excess of $120,000, any adjustment may be insignificant if it is still found to be in excess of $120,000, thus negating any need for establishing a new amount for child support on remand. See R.C. 3113.215(B)(2)(b). Again, the issue of child support is dependent upon the resolution of Peter's custody. The calculation for an amount of child support obligation is set forth in R.C. 3113.215. R.C. 3113.215(A)(2) states, in relevant part:

" 'Gross income' means, except as excluded in this division, the total of all earned and unearned income from all sources during a calendar year * * *."

Thus, the "calendar year" may or may not coincide with a tax year for purposes of a child support calculation. For example, if a child support hearing is held in November, the "gross income" calculation would include the proportionate income from November and December of the previous year and January through the date of the hearing of the year in which the hearing is held. See R.C. 3113.215; see, also, *Ferguson v. Ferguson* (1992), 76 Ohio App.3d 818, 603 N.E.2d 391. Furthermore, the "Basic Child Support Schedule," R.C. 3113.21.-5(E), effective April 11, 1991, specifically provides a work sheet for calculation of child support in shared-parenting custody arrangements. See R.C. 3113.21.5(E). Accordingly, appellant's sixth assignment of error is well taken and is sustained.

Appellant's seventh, eighth, ninth and tenth assignments of error relate to the trial court's division of property. In the seventh assignment of error, appellant asserts that the trial court erred by failing to make an equal or equitable division of property. See R.C. 3105.171. A review of the record illustrates that the values of the greater portion of the parties' marital assets were stipulated by the parties. These assets include:

| Asset | Stipulated value |
|---|---|
| 1984 Oldsmobile Station Wagon | $ 3,375.00 |
| 1982 Mercedes Benz 380 SL | 21,000.00 |
| 2 Metropolitan Life Ins. Policies | 43,983.00 |
| Stock | 2,801.00 |
| Retirement | 492,624.00 |
| Bonds | 390,093.00 |
| Cash accounts | 77,328.00 |

The total amount of the stipulated value for these marital assets is $1,031,204. Matters of contention were the marital residence, appellant's law practice, the household furnishings, and a determination as to what assets constituted separate property.

The marital residence is not encumbered with a mortgage. The appellee's expert offered testimony suggesting the fair market value of the marital residence to be $300,000. Appellant's expert's appraisal suggested a fair market value of $350,000. In its opinion, the trial court fixed the fair market value of the marital residence as the average $325,000 of the two expert opinions. The trial court was well within its discretion in arriving at this amount based on the evidence before it.

There was no evidence presented as to the value of the household goods and furnishings. The trial court complied with the parties' desire for an in-kind physical division and ordered that two-thirds of the household goods and furnishings go to the appellee and one-third go to the appellant on a rotation selection basis, and that the children's furnishings be excluded from the division. In light of the entire division of property, this aspect of the trial court's award did not constitute an abuse of discretion.

As to the issue of separate property, the appellant asserts that the trial court should have acknowledged the $20,060 in cash and $2,380 cash value of his Metropolitan Life insurance policy which he accumulated prior to this marriage. However, in its opinion, the trial court concluded that these assets had been substantially transmuted into marital property, citing *Kuehn v. Kuehn* (1988), 55 Ohio App.3d 245, 564 N.E.2d 97. The court in *Kuehn* states at 246, 564 N.E.2d at 99:

"When considering an alleged transmutation the trial court, within its sound discretion, should consider (1) the expressed intent of the parties insofar as it can be reliably ascertained; (2) the source of the funds, if any, used to acquire the property; (3) the circumstances surrounding the acquisition of the property; (4) the dates of the marriage, the acquisition of the property, the claimed transmutation, and the breakup of the marriage; (5) the inducement for and/or purpose of

the transaction which gave rise to the claimed transmutation; and (6) the value of the property and its significance to the parties. Banks–Baldwin's Ohio Domestic Relations Law (1987), Section T–25.02(H)."

■ The evidence shows that the $20,060 in cash was used as the down payment on the parties' marital residence. The purpose of the transaction was to provide a residence for the parties, which it did for seventeen years. Given the duration of the marriage and the significance of the property not only to the parties but to the entire family, this court cannot conclude that the trial court abused its discretion, since the overall purpose of the investment benefitted the entire family throughout the years. By determining that appellant's separate cash property used for the purposes of a cash down payment for the marital residence became transmuted into marital property within the seventeen-year duration of the marriage, the trial court properly applied the considerations set forth in *Kuehn* and, thus, did not abuse its discretion.

■ Likewise, appellant's Metropolitan Life insurance policy, with a cash value of $2,380, also could be considered to have been transmuted to marital property, since, over the duration of the seventeen-year marriage, this asset acquired the purpose of benefitting the family unit. Again, the significant facts as applied to this case are the long duration of the marriage and the acquired benefit to the family unit.

The parties could not agree to a valuation of appellant's law practice. Furthermore, appellant asserts that his law practice is nonmarital, separate property and relied upon the Eighth Appellate District's decision in *Josselson v. Josselson* (1988), 52 Ohio App.3d 60, 557 N.E.2d 835. The *Josselson* court reasoned that a law practice is unique and impacts more so on the issue of "earning capacity" under former R.C. 3105.18(B). Appellee characterizes appellant's law practice as a marital asset. However, there is no evidence in the record which sets forth the current fair market value of Robert Frost & Associates. Furthermore, there is no evidence as to the law practice's pre-marriage and post-marriage valuation, considering the fact that appellant had been in practice for approximately ten years prior to his marriage to appellee. It is apparent that none of appellee's efforts can be attributed to establishing the law practice, since the appellant had established, and had been practicing law, ten years prior to the parties' marriage. Appellee's expert, at best, provided a valuation on the "good will" aspect of the law practice.

The court in *Josselson*, despite its holding, even acknowledged that "an established law practice may be evaluated as any other business." The trial court, in recognizing that the law practice was "over-funded," determined that it was an asset which must be economically preserved intact pursuant to R.C.

3105.171(F)(5), since it was the primary source of income for the parties. Thus, the trial court considered the law practice to be a joint source of income for the parties. It would appear that the trial court surmised that the law practice itself was the separate property of appellant, whereas the income generated from the law practice over the duration of the parties' seventeen-year marriage was considered a marital asset.

The relevant evidence before the trial court consisted of the following: Ron Kuck, appellee's expert, set forth a valuation of the "excess earning stream" or "good will" of appellant's law practice. He determined that appellant's income has been in excess of the average by $91,670 per year for the last five years. He also testified that appellant had $219,000 in cash accounts. James Landaker, appellant's expert, testified that appellant's 1991 net income would be $92,000 (year to date of hearing) plus another projected $4,000–$6,000 for the months of November and December. The expert stated that $85,000 of the 1991 net income was included in the $195,000 in what he termed as "working capital" or "reserve funds."

The evidence before the trial court included not only the testimony of the two experts, but also documentation that included the parties' joint income tax returns from the five previous years. Also included with these income tax returns were the Schedule C "profit or loss from business" statements. Additionally, the evidence before the trial court included previous balance sheets prepared for appellant's law firm for the period ending December 31, 1989 to the period ending June 30, 1991.

Upon review, it is of little significance whether a court characterizes the law practice of a sole practitioner as marital or nonmarital property. The reality of the situation only makes common sense to keep the asset intact. See R.C. 3105.171(F)(5). The difficulty occurs in determining a valuation for purposes of compensating the nonlawyer spouse in a division of property, given the equities of each particular case.

In this particular instance, the trial court concluded that the law practice was appellant's separate property, since he had established his practice ten years prior to this marriage. However, the trial court found that the income generated from the law practice was a marital asset as it was accumulated over the period of the marriage. Furthermore, under the facts of this case, the trial court made a finding, as supported by the evidence, that the law firm was "over-funded." Consequently, in its property division, the trial court made a deliberate effort to award to appellant assets necessarily related to his business, and award to appellee income-earning investment assets to counterbalance the effect on the overall property division.

Accordingly, appellant has failed to demonstrate that the trial court abused its discretion in its division of property between the parties. Thus, appellant's seventh assignment of error is not well taken and is overruled.

 In the eighth assignment of error, appellant asserts that the trial court failed to consider the tax consequences between assets on which taxes had been paid and assets on which taxes had been deferred. Appellant asserts that the trial court erred when it did not differentiate between the tax-deferred Keogh plan and the IRA and cash accounts on which taxes have already been paid. Appellant relied upon this court's holding in *Day v. Day* (1988), 40 Ohio App.3d 155, 532 N.E.2d 201. The trial court acknowledged in its February 20, 1992 opinion and judgment entry as follows:

"As determined *supra* (this Op., p. 11), defendant's law practice is not a marital asset *per se*. However, the fact is not lost on the Court that this business entity is over-funded to the tune of $210,000 (Kuch [*sic*] testimony). If Mr. Frost were to withdraw this sum, or any portion of it, from his business, he would take it without any personal income tax consequences since these taxes have been pre-paid (Kuch [*sic*] and Landamaker testimony). The above figure does not represent client trust funds, and it excludes money necessary to meet business operating expenses and debts, thus, while not 'marital property,' the above sum is available for a potential 'distributive award', if appropriate, pursuant to R.C. 3105.171(A)(1) and (E)(1) or (2)."

In light of this court's disposition of appellant's seventh assignment of error and considering the trial court's stated rationale that it considered the tax consequences of the cash accounts, this court cannot conclude that the trial court did not consider the tax consequences as to every aspect of the property division, nor can this court conclude that, if the trial court was remiss in considering the tax consequences of a specific marital asset, that the error, if such error exists, was prejudicial to appellant. Given the comprehensive detailed opinion of the trial court, this court is convinced that the trial court went to extraordinary efforts in following the law and reaching a fair and equitable property division. Likewise, this court stated in *Day, supra,* that it was not requiring the plaintiff in that case to withdraw the funds from his Keogh plan, thus relinquishing any control of the timing of the withdrawal of funds. In the instant case, the trial court's award allowed the fund to remain intact and, by awarding the fund to the appellant, the trial court relinquished all control as to when appellant might withdraw those funds rendering the predictability of any tax consequences as uncertain. Moreover, no testimony was presented to demonstrate the value of the fund at the projected time of the withdrawal of funds upon retirement.[1]

---

1. The issue becomes more remote in predicting when appellant will retire.

Accordingly, appellant's eighth assignment of error is not well taken and is overruled.

In the ninth assignment of error, appellant asserts that the trial court erred in determining that appellant had $210,000 in his law firm available for a "distributive award." The trial court relied upon the testimony of appellee's expert to arrive at this amount. Pursuant to R.C. 3105.171(A)(1) and (E)(1) and (2), the trial court divided the $210,000, determined to be excess cash of the law firm, by awarding appellee $18,700 and appellant $191,300. A "distributive award," pursuant to R.C. 3105.171(A)(1), is defined as " * * * any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code."

■ It is not disputed that a major portion of the $210,000 cash accounts of the law firm was generated by income from clients. Since the trial court found that the income from the law firm was a joint or "marital" asset, the division of the cash account would not be a distributive award but, rather, the division of a marital asset, depending on the equities of the overall property division award. Appellant's expert testified that the law firm needed working capital in the range of $174,000 to $194,000. The trial court awarded appellant $191,300. Accordingly, the division of the cash account of the law firm was not a "distributive award," but rather a marital asset as set forth in R.C. 3105.171(A)(3)(a)(iii), since it consisted of income generated by appellant's law firm (found by the trial court to be appellant's separate property).

Accordingly, appellant's ninth assignment of error is well taken and sustained to the extent that it improperly characterizes appellee's $18,700 cash award from the law firm account as a "distributive award." However, the award was properly made as a division of marital property given the overall property distribution between the parties, and when considering the equities of the parties' circumstances.

In the tenth assignment of error, appellant asserts that the trial court erred when it divided the appellant's separate property and labeled it as a "distributive award." The trial court found that appellant's premarital assets consisting of $20,060 in cash and the $2,380 cash value of the Metropolitan Life insurance policy had been transmuted into marital property under the guidelines set forth in *Kuehn, supra.* Furthermore, as modified by this court in the disposition of appellant's ninth assignment of error, the trial court improperly referred to the $18,700 cash award to appellee from the cash account of the law firm as a "distributive award." The trial court found that, although the law firm itself was appellant's separate property, the income generated from the law firm over the

period of the marriage was a marital asset. Since the law firm's cash accounts primarily consisted of income generated by clients, it was proper for the trial court to award appellee $18,700 from that account to balance the equities of the overall property division. Furthermore, although the trial court did not give a detailed description of the tax consequences of each marital asset, it is apparent from the trial court's opinion that it considered the overall tax consequences and sought to award assets related to his business to appellant, and interest bearing investment assets to appellee. Moreover, as previously stated, it is difficult to evaluate the tax consequences of the Keogh plan, since the time of withdrawal has not been dictated by the trial court and has been left to the discretion of appellant in this instance. See *Day, supra.* Accordingly, appellant's tenth assignment of error is not well taken and is overruled.

■ In the eleventh assignment of error, appellant asserts that the trial court erred in awarding appellee additional sums for spousal support when she has the ability to be self-supporting, and by not considering her investment and passive income in determining the amount of the award. The trial court, after dividing the separate and marital property, and after considering the award of child support, determined a "need" for spousal support in the amount of $3,000 per month until May 31, 1997 or until "termination" as defined in the order. The trial court also awarded appellee $35,000 as "spousal support" to be applied to the debt for her attorney fees. Also in its order, the trial court considered that the spousal support award will be taxable income to the appellee and tax deductible for appellant. See R.C. 3105.18(C)(1).

Upon review, the testimony, in relevant part, of a vocational consultant was as follows:

"Q. Okay. As a result of your involvement with Mrs. Frost, and the steps and procedures that you have set forth in your Report, you have come to a conclusion with regard to her employability?

"A. Yes.

"Q. And will you tell the Court what your conclusion is with regard to her employability?

"A. My conclusion is that at the present time Mrs. Frost is unable to be employed in a gainful activity.

"Q. On a full-time basis?

"A. On a full-time or a part-time basis.

"Q. With regard to your Report do you know that Mrs. Frost is taking some courses at Ohio State University?

"A. Yes.

"Q. Did you consider that with regard to your opinion?

"A. Yes.

"Q. And can you correlate those, your opinion and the fact that she is taking courses at Ohio State, please?

"A. Yes."

Even when considering the fact that appellee was pursuing further course work at Ohio State University, it was the vocational consultant's opinion that she was not capable of gainful employment, either part-time or full-time, at the time of the hearing. Thus, there is sufficient evidence to support the trial court's conclusion that appellee has established a "need" for spousal support pursuant to R.C. 3105.18 and the factors set forth in R.C. 3105.18(C)(1) of that section.

R.C. 3105.18(C)(1)($l$) requires the court to consider the tax consequences of an award of spousal support. In its February 20, 1992 opinion, the trial court expressly stated that "[a]ny spousal support award to the plaintiff will be taxable income to her and tax deductible to the defendant (R.C. 3105.18(C)(1)($l$))." The trial court did not state whether it specifically considered appellee's investment and passive income, although it did expressly state that it only considered spousal support after dividing the separate and marital property. It is appellant's contention that appellee realizes $33,866 per year in tax-free income. However, what appellant failed to consider was the $36,000 in spousal support which will be taxable income to appellee and, thus, to a certain degree, will offset the amount she receives in tax-free income. Moreover, the trial court made its spousal support determination only after dividing the separate and marital property of the parties. Since the trial court admittedly awarded appellant assets associated with his business while attempting to give appellee investment earning assets, the trial court accounted for the income-producing nature of the assets it awarded to appellee.[2] Although the trial court did not expressly state as such, when considering the tax consequences of the spousal support amount, the trial court's award is not an abuse of discretion. Accordingly, appellant's eleventh assignment of error is not well taken and is overruled.

In the twelfth assignment of error, appellant asserts that the trial court erred when it failed to fix a date certain for the termination of spousal support and erred by reserving jurisdiction for a review of spousal support until May 1997. In its opinion, the trial court discussed the applicability of *Kunkle v.*

---

2. On page 14 of the trial court's decision it states:

"The Court has made a deliberate effort to divide the above property so that Mrs. Frost will receive a high proportion of income-earning/investment assets while Mr. Frost retains those necessarily related to his business. * * *"

*Kunkle* (1990), 51 Ohio St.3d 64, 554 N.E.2d 83, and stated that "many of the 'exceptions' observed by the *Kunkle* court" justified a permanent award of spousal support in light of the facts of this case. However, the trial court stopped short of making a permanent alimony award. Instead, the trial court made the following order:

"Upon consideration of all of the parties' respective circumstances, the Court determines that the defendant shall pay the plaintiff, as and for spousal support, the sum of $3,000 per month until May 31, 1997 (following the younger child's emancipation) or until termination: upon the death of either party (R.C. 3105.-18(B)); plaintiff's remarriage; plaintiff's full-time employment (defined as 35 hours, or more, per week at $5.00, or more, per hour); or plaintiff's cohabitation with any non-relative person, whichever event occurs first in point of time.

"Pursuant to R.C. 3105.18(E), the Court expressly retains continuing subject matter jurisdiction over the issue of spousal support. If not done earlier, the matter will be reviewable in May, 1997.

"In addition to the above periodic spousal support award, the defendant will pay to the plaintiff, *within ninety (90) days from the date of this order,* the sum of $35,000 to be applied upon her partial attorney's fees as further spousal support (*Swanson v. Swanson* (1976), 48 Ohio App.2d 85 [2 O.O.3d 65, 355 N.E.2d 894]; *Cassaro v. Cassaro* (1976), 50 Ohio App.2d 368 [4 O.O.3d 320, 363 N.E.2d 753]; *Birath v. Birath* (1988), 53 Ohio App.3d 31 [558 N.E.2d 63]; *Stout v. Stout* (1982), 3 Ohio App.3d 279 [3 OBR 325, 445 N.E.2d 253], applied and followed)."

In reviewing the holding of *Kunkle,* the Supreme Court held:

"Accordingly, we hold that except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities." *Kunkle,* 51 Ohio St.3d at 69, 554 N.E.2d at 88.

Accordingly, it was improper for the trial court not to apply the rule of *Kunkle* to the facts at bar. Thus, this court remands this matter to the trial court for the limited purpose of applying *Kunkle.* The only issue to be determined is whether appellee's spousal award is "permanent" and within the allowed exceptions as set forth in *Kunkle.* If the trial court finds that a *Kunkle* exception applies to the facts herein, the spousal support will be considered permanent and modified only upon a change of circumstances as set forth in R.C. 3105.18(F). If the trial court determines that the spousal award is not permanent, then it must provide for the termination of spousal support on a date certain, in order to place a definitive

limit upon the parties' rights and responsibilities. Accordingly, appellant's twelfth assignment of error is well taken and is sustained.

In the thirteenth assignment of error, appellant asserts that the trial court erred by using stale evidence in its determination of appellant's income for purposes of spousal support. This issue was addressed tangentially in appellant's sixth assignment of error in regard to the issue of child support.

The statute governing the determination for spousal support, R.C. 3105.18, refers only to the "income of the parties." See R.C. 3105.18(C)(1)(a). Thus, this code section gives more latitude to the trial court in calculating income for purposes of spousal support as compared to R.C. 3113.215(A)(2), which specifies that child support be based upon "'gross income' * * * earned or unearned * * * during a calendar year." Thus, as the statutes are written, the trial court is within its discretion to arrive at amounts of spousal support and child support based on different calculations, since the calculation for child support is based upon actual wages earned, whereas the calculation of spousal support is determined by earning capacity. The calculation for child support is more specifically set forth by statute. See R.C. 3113.215. Moreover, the calculation for child support mandates a specific time period within which to consider income for purposes of calculation whereas the statute for spousal support does not in light of the fact that it is based upon potential income and earning ability and not actual income. Accordingly, appellant's thirteenth assignment of error is not well taken and is overruled.

In the fourteenth assignment of error, appellant asserts that the trial court erred when it awarded appellee $35,000 in attorney fees. R.C. 3105.18(A) provides:

"(A) As used in this section, 'spousal support' means any payment or payments to be made to a spouse or former spouse, or to a third party for the benefit of a spouse or a former spouse, that is both for sustenance and for support of the spouse or former spouse. 'Spousal support' does not include any payment made to a spouse or former spouse, or to a third party for the benefit of a spouse or former spouse, that is made as part of a division or distribution or property or a distributive award under section 3105.171 of the Revised Code."

As noted in the trial court's February 20, 1992 opinion and judgment entry, appellant expended the sum of $78,000 to his attorney for fees as of April 24, 1991. This money came from "personal (non-law firm) funds (see Joint Exh. G)," *albeit* marital assets. Although not expressly stated by the trial court, and even though the trial court found that Mr. Frost was not guilty of financial misconduct, the trial court was well within its discretion and well within the parameters of R.C. 3105.18(A) in awarding $35,000 for attorney fees as further spousal support

for the appellee. Accordingly, appellant's fourteenth assignment of error is not well taken and is overruled.

Appellant asserts in his fifteenth assignment of error that the trial court erred when it did not acknowledge the appellant's pre-marital assets. In the disposition of appellant's tenth assignment of error, this court concluded that the trial court properly found that appellant's pre-marital cash assets and life insurance policy had been transmuted into marital assets when applying the factors as set forth in *Kuehn.* Thus, for the sake of not being repetitive, this court finds that appellant's fifteenth assignment of error is not well taken and is overruled.

In the sixteenth assignment of error,[3] appellant asserts that the trial court erred by refusing to grant appellant's Civ.R. 59 motion for a new trial. Civ.R. 59(A) provides:

"Rule 59. New trials

"(A) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

"(1) Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

"(2) Misconduct of the jury or prevailing party;

"(3) Accident or surprise which ordinary prudence could not have guarded against;

"(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

"(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

"(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

"(7) The judgment is contrary to law;

"(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

"(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

---

**3.** Although appellant lists fifteen assignments of error in his brief's "Table of Contents and Assignments of Error," he has set forth and argued a sixteenth assignment of error within the body of his brief. This court will address appellant's sixteenth assignment of error.

"In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.

"When a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted.

"On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and enter a new judgment."

As set forth in the disposition of appellant's first fifteen assignments of error, although some issues have been remanded to the trial court for proper disposition, the judgment was not against the manifest weight of the evidence. The issue of Peter's custody is being remanded, not because the decision was against the manifest weight of the evidence, but, rather, because the trial court apparently did not consider appellee's motion for shared parenting. Since the issue of child support is contingent upon the resolution of Peter's custody, this issue is necessarily being remanded. Furthermore, the issue of whether the spousal award is permanent is being remanded for the application of the holding in *Kunkle* and, thus, does not involve a question of manifest weight of the evidence.

The appellant also contends that the trial court overlooked $49,321 in additional pre-marital or inherited property. As was previously stated in the disposition of appellant's seventh assignment of error, the $20,060 in cash and the $2,300 value of the Metropolitan Life insurance policy was transmuted to marital property pursuant to the factors set forth in *Kuehn, supra.*

 Appellant is correct in stating that the $3,040 which he inherited from his mother's estate should be considered his separate property. However, the trial court either considered it, or if it did not consider it, the amount in proportion to the size of the marital estate was not significant enough to warrant grounds for a new trial pursuant to Civ.R. 59. What remains for this court to consider are those items delineated in defendant's exhibit 5. This remaining list would include:

| | |
|---|---|
| Real estate investment | $ 4,723.00 |
| Park Federal Savings and Loan Acct. # 01–121506 | 4,031.00 |
| Buckeye Federal Savings and Loan # 88–702857 | 7,407.00 |
| Central Trust Co. | 4,000.00 |
| Central Trust Savings Acct. # 08051468–0 | 5,051.00 |
| American Financial 500 shares | 7,069.00 |
| Automobile (Jaguar) and personal property | 14,000.00 |

Since these assets were submitted into evidence and considered as part of the record in the trial court's ultimate decision, they do not constitute "newly discovered" evidence which would warrant a new trial pursuant to Civ.R. 59. Moreover, the trial court stated in its February 20, 1992 opinion and judgment entry as follows, in relevant part:

"As to 'separate property', it is not disputed by the parties that the defendant 'brought into' this marriage a $20,060 cash down payment on the real estate and a Metropolitan Life insurance policy with $2,380 in cash value, and plaintiff essentially brought in nothing (R.C. 3105.171(A)(6)(a)(ii)). While Mr. Frost lists other property allegedly brought into this marriage in his trial brief (p. 1–2, also Def. Exh. 5), no evidence was presented at trial to support this position or to establish the present existence of these assets as separately identifiable, traceable assets to him. It is the Court's conclusion, therefore, that such assets, if in existence, have been substantially transmuted into marital property (*Kuehn v. Kuehn* (1988), 55 Ohio App.3d 245 [564 N.E.2d 97], applied). During the marriage, Mrs. Frost acquired certain jewelry and furs from the defendant, amounting to roughly $71,500, as gifts and consequently her separate property (*Green v. Green* (1989), 64 Ohio App.3d 37 [580 N.E.2d 513]; R.C. 3105.-171(A)(6)(a)(vii), applied)."

■ Thus, the trial court concluded that although appellant had listed these items as separate property, without any evidence in the record substantiating their "separateness," it was the trial court's conclusion that such assets had been substantially transmuted into marital property. Upon our review, the record is devoid of any evidence that these particular assets were treated or regarded by the parties as appellant's separate property throughout the duration of their seventeen-year marriage. Accordingly, appellant's sixteenth assignment of error is not well taken and is overruled.

Based on the foregoing, appellant's second, fifth, seventh, eighth, tenth, eleventh, thirteenth, fourteenth, fifteenth and sixteenth assignments of error are not well taken and are overruled. Appellant's first, third, fourth, sixth and twelfth assignments of error are sustained; appellant's ninth assignment of error is sustained to the extent discussed herein. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed in part, as

724

modified, and reversed in part. The matter is remanded to the trial court for further proceedings in accordance with law and this opinion.

*Judgment affirmed in part,*
*as modified,*
*reversed in part*
*and cause remanded.*

BOWMAN and DESHLER, JJ., concur.