JOURNAL AND OPINION
{¶ 1} Defendant-appellant, James E. Burns, appeals the trial court's August 18, 2006 judgment, sustaining in part and overruling in part his objections to the magistrate's decision regarding spousal support, and adopting the decision as modified. For the reasons that follow, we affirm in part, reverse in part and remand for correction of the trial court's entry.
 {¶ 2} After Rothman initiated this divorce action, the parties executed a separation agreement, which was incorporated into the divorce decree. At the time of the divorce, Burns was not regularly employed. The parties therefore agreed in their separation agreement that the issue of post-decree spousal support would be held in abeyance until after Burns had secured regular employment. Burns obtained employment in July 2005, so advised Rothman, and she timely filed a motion for spousal support. Burns opposed Rothman's motion, contending that she was not entitled to spousal support pursuant to R.C. 3105.18. *Page 2 
 {¶ 3} A pretrial hearing relative to Rothman's motion was held on January 17, 2006 and an evidentiary hearing was held on March 22, 2006. Burns filed pretrial statements prior to both hearings; Rothman did not. At the March 22 hearing, Burns objected to Rothman's being able to present any evidence relative to her income or expenses because she did not file pretrial statements. The court overruled the objection.
 {¶ 4} On April 13, 2006, the magistrate issued his decision with findings of fact and conclusions of law. In his decision, the magistrate ordered Burns to pay Rothman spousal support in the amount of $965.90 per month for eleven years. Burns timely filed objections to the magistrate's decision, to which Rothman responded.
 {¶ 5} On August 18, 2006, the trial judge sustained in part and overruled in part Burns' objections, and adopted the magistrate's decision as modified. The modifications ordered Burns to pay Rothman spousal support in the amount of $920 per month, "subject to further order of the Court," for eleven years, or until Rothman remarries or cohabitates with an adult male as if remarried, or until the death of either party. Burns now appeals.
 {¶ 6} The record before us demonstrates the following. The parties were married in June 1977 and were divorced in January 2005 and, therefore, had an *Page 3 
approximate 271/2 year marriage. Two issue were born of the marriage, and their son was a minor at the time of the divorce.
 {¶ 7} Burns is a licensed attorney who, at the time of the March 22 hearing, was earning $67,320. Rothman edits medical newsletters, and for the most part, has been self-employed. Rothman testified that she supported Burns while he attended law school from 1983 to 1986. The parties' 2002 joint tax return indicated that Burns earned $111,336 and Rothman earned $16,552. The parties' joint tax return for 2003 indicated that Burns earned $62,220 and Rothman earned $12,811.32. Rothman's single tax return for 2004 indicated that she earned $17,507. Rothman's receipts for the 2005 tax year indicated that her approximate net earnings were $14,214.20. She further testified that in 1999 and 2000, she earned approximately $100,000 each year.
 {¶ 8} Rothman explained that the reason she earned so much in 1999 and 2000 was because she worked the equivalent of approximately two full-time jobs, as Burns' law practice was failing. At the time, she was editing two medical newsletters for the Cleveland Clinic. When the publications were sold, the Clinic kept her for only one publication at a salary of $35,000. The income Rothman earned at that time was based on being paid $1.00 per word. Rothman testified, however, that the best rate now is approximately $.65 per word. *Page 4 
 {¶ 9} Rothman further testified that there is not a lot of work available in her field, as many of the hospitals do not have the large budgets they once had. She testified that she had not taken any steps to reduce her income, had not refused any offers of employment, and had not turned down any freelance jobs. She testified that she had taken steps to actively seek work.
 {¶ 10} An appellate court reviews the propriety of a trial court's determinations in a domestic relations case under an abuse of discretion standard. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. Abuse of discretion is more than an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Instead, "it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id.
 {¶ 11} In his first assignment of error, Burns contends that the trial court abused its discretion by allowing Rothman to present evidence at the March 22 hearing because she did not file pretrial statements disclosing her income and expenses pursuant to Loc.R. 12(A) of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division.
 {¶ 12} Upon review, we find that the trial court did not abuse its discretion. The record demonstrates that Burns served Rothman with a request for production of documents, to which she responded. Burns never filed a motion to compel alleging that Rothman had failed to appropriately or adequately respond to his request. *Page 5 
Therefore, because Burns had access to Rothman's income and expenses, we do not find that the trial court allowed Rothman's "stealth case to proceed, * * * depriving] Burns of his right to avoid `trial by ambush,'" as Burns contends. The trial court did not abuse its discretion by allowing Rothman to present evidence, and the first assignment of error is overruled.
 {¶ 13} In his second assignment of error, Burns contends that the trial court abused its discretion and reached a conclusion against the manifest weight of the evidence in determining Rothman's earning ability and his and Rothman's standard of living for the purpose of ordering and calculating spousal support.
 {¶ 14} R.C. 3105.18(C)(1) sets forth the factors a court must consider when determining whether spousal support is appropriate and reasonable and in determining the amount and duration of spousal support:
 {¶ 15} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 [3105.17.1] of the Revised Code;
 {¶ 16} "(b) The relative earning abilities of the parties;
 {¶ 17} "(c) The ages and the physical, mental, and emotional conditions of the parties;
 {¶ 18} "(d) The retirement benefits of the parties;
 {¶ 19} "(e) The duration of the marriage; *Page 6 
 {¶ 20} "(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 {¶ 21} "(g) The standard of living of the parties established during the marriage;
 {¶ 22} "(h) The relative extent of education of the parties;
 {¶ 23} "(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 {¶ 24} "(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 {¶ 25} "(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 {¶ 26} "(l) The tax consequences, for each party, of an award of spousal support;
 {¶ 27} "(m) The lost income production capacity of either party that resulted from that party's marital responsibilities; *Page 7 
 {¶ 28} "(n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 29} Burns argues that the trial court's judgment entry is insufficient in regard to the statutory factors to support an award of spousal support. In particular, Burns contends that the court erroneously relied on the parties' incomes only from 2002, 2003, and 2004 in determining Rothman's earning capacity. According to Burns, Rothman was voluntarily underemployed in that she had a "sizeable income during that time when she had chosen to work to capacity," which he claims was in 1999 and 2000.
 {¶ 30} Ohio courts have determined that earning ability involves "both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment." Haninger v. Haninger (1982), 8 Ohio App.3d 286, 288,456 N.E.2d 1228. When considering the relative earning abilities of the parties in connection with an award of spousal support, Ohio courts do not restrict their inquiry to the amount of money actually earned, but may also hold a person accountable for the amount of money a "person could have earned if he made the effort." Beekman v. Beekman (Aug. 15, 1991), Franklin App. No. 90AP-780.
 {¶ 31} Because R.C. 3105.18(C) permits inquiry into a party's earning potential, Ohio courts often impute income to parties who are voluntarily *Page 8 
underemployed or otherwise not working up to their full earning potential. See, e.g., Frost v. Frost (1992), 84 Ohio App.3d 699,618 N.E.2d 198; Haninger, supra; Beekman, supra; Gillingham v.Gillingham (May 28, 1992), Montgomery App. No. 12766.
 {¶ 32} Here, the record reveals that in 1999 and 2000, Rothman earned approximately $100,000 after her business expenses. She testified that her income was that high, however, because she was working almost the equivalent of two full-time jobs, editing two medical newsletters for the Cleveland Clinic. Rothman explained that she was working so much during that time period because Burns' law practice was failing. When the publications she was editing were sold, the Cleveland Clinic kept her on for only one publication at a salary of $35,000, which was based on her being paid $1.00 per word. Rothman testified that the going rate for editing now is $.65 per word, not $1.00 per word.
 {¶ 33} Rothman further testified that when Burns' income increased in 2001, Burns agreed that she could stop working so much. Since 2002, Rothman's income, after business expenses, has been between $12,811 and $18,000 per year. Rothman testified as to the difficulty she has had in finding work because there is not a lot of work available in her field. She explained that the hospitals do not have the big budgets that they once had and cannot afford to pay anyone except their own staff to do the type of work she does. Rothman testified that she had not refused *Page 9 
any offers of employment, had not turned down any freelance jobs, and had actively taken steps to seek work.
 {¶ 34} Based on the record, we do not find that Rothman was voluntarily underemployed. The fact that at one point she earned significantly more than what she was earning at the time of the hearing is explained by the exigent circumstances of this case, i.e. Burns' law practice was failing and Rothman was working the equivalent of almost two full-time jobs. Moreover, the parties agreed in their separation agreement that the court was to determine spousal support based on "the financial circumstances of the parties at the time."
 {¶ 35} Burns' argument that Rothman is, in essence, using him to subsidize her "relaxed lifestyle" is not supported by the record. At the time of the hearing, Rothman lived in a two-bedroom apartment, did not have health insurance, was not contributing to a retirement or savings plan, and had no "discretionary" money (i.e., for entertainment, shopping, etc.) after paying her necessary expenses.
 {¶ 36} Finally, Burns insinuates, citing Taylor v. Taylor, Cuyahoga App. No. 86331, 2006-Ohio-1925, that the trial court abused its discretion by not making specific findings on all the factors set forth in R.C. 3105.18(C)(1). We find this case distinguishable fromTaylor. In Taylor, the court did not mention the R.C. 3105.18(C)(1) factors in connection with its award of spousal support, except to say that it had taken into account all of the elements of the statute in making its award. *Page 10 
Here, however, after giving an extensive breakdown of the parties' earnings since 2003, the court stated:
 {¶ 37} "The Court finds, after consideration of all the factors set forth in Ohio Revised Code § 3105.18 including the length of the marriage and the parties' ages, incomes, assets and liabilities, that the Plaintiff is in need of and entitled to, an award of sustenance spousal support from the Defendant * * *. The Court further finds that the Defendant has the financial ability to pay same."
 {¶ 38} The court, therefore, as opposed to the Taylor court, did reference the factors it primarily relied upon in making its award of spousal support. Moreover, evidence was presented at the hearing on the other factors, and therefore, the fact that the trial court did not make specific findings on each and every factor is not grounds for reversal. See Miller v. Miller, Stark App. No. 2004CA00081, 2004-Ohio-6141
(finding that the trial court satisfied the requirements to provide its facts and reasons for awarding spousal support where it specifically mentioned only four R.C. 3105.18(C)(1) factors, but where evidence was presented on the remaining factors).
 {¶ 39} Based on the above, we do not find that the trial court abused its discretion in awarding spousal support to Rothman, and Burns' second assignment of error is overruled.
 {¶ 40} In his third assignment of error, Burns contends that the trial court abused its discretion in determining Rothman's liabilities. In particular, Burns *Page 11 
contests the trial court's finding that "Wife supported Husband and his education expenses were paid off during the marriage." Burns argues that this finding was wrong, as he testified that he still owed $7,643 in law school loans. The testimony also revealed, however, that Rothman worked while Burns attended law school and that the parties had to borrow money for Burns' law school education, some of which was paid back from joint income. The testimony further revealed that some of Burns' undergraduate loans were outstanding at the time of the parties' marriage, and were paid off during the marriage. While it may be that Burns still owed some money for his law school education at the time of the hearing, the record reveals that not only did Rothman support Burns while he was in law school, but that some of his educational debt was paid off with joint income. We, therefore, find the trial court's finding in this regard to be harmless error, at best.
 {¶ 41} Burns further argues that the trial court failed to take into consideration other debt he owed, including a loan against his 401(K) plan, a balance on his Capital One credit card, attorney fees relative to the divorce, and a balance owed to his psychiatrist. In regard to the retirement plan, it was through no fault of Rothman that Burns had to borrow money from it, and the repayment to it will accrue to his, not Rothman's, benefit. The trial court, therefore, did not abuse its discretion by holding Rothman free of that debt. *Page 12 
 {¶ 42} In regard to the credit card debt, the record shows that because Burns assumed that debt, Rothman waived her share of equity in the parties' marital residence. With respect to Burns' attorney fees, R.C. 3105.73 provides that, in a divorce post-decree motion or proceeding, a trial court may award either party attorney fees if the court finds the award equitable. "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." R.C. 3105.73(B). Upon review, the trial court did not abuse its discretion by ordering that each party bear the responsibility for their own attorney fees. In regard to Burns' debt for his mental health treatment, we find that the debt was an individual debt, for which he should bear responsibility. In fact, Rothman's expense statement reflected that she has her own expenses related to mental health treatment, for which she is solely responsible.
 {¶ 43} Therefore, Burns' third assignment of error is overruled.
 {¶ 44} In his fourth assignment of error, Burns argues that the trial court abused its discretion in considering the evidence relative to the former marital home. Specifically, Burns takes exception to the trial court's finding that he "testified that he has no intention of attempting to sell the marital home. Doing so obviously would provide him with some living expense relief along with some equity that could be invested." Burns claims that the record did not support these findings, as the only *Page 13 
evidence regarding equity in the house was presented from his testimony, wherein he stated that there was no equity in the house. The record, however, demonstrates that Rothman gave up her share of the equity in the house in exchange for Burns assuming the Capital One credit card debt. Moreover, Burns admitted that an appraisal of the house was never done and that he never attempted to sell it. Without having a value on the house, Burns had no basis on which to claim that there was no equity in the house.
 {¶ 45} Therefore, appellant's fourth assignment of error is overruled.
 {¶ 46} In his fifth and final assignment of error, Burns maintains that the trial court erred as a matter of law by reserving jurisdiction to modify its support order. Rothman concedes this assignment of error.
 {¶ 47} R.C. 3105.18(E) provides in pertinent part:
 {¶ 48} "(E) * * * [I]f a continuing order for periodic payments of money as spousal support is entered in a divorce or dissolution of marriage action that is determined on or after January 1, 1991, the court that enters the decree of divorce or dissolution of marriage does not have jurisdiction to modify the amount or terms of the * * * spousal support unless the court determines that the circumstances of either party have changed and unless one of the following applies:
 {¶ 49} "(1) In the case of a divorce, the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision *Page 14 
specifically authorizing the court to modify the amount or terms of * * * spousal support."
 {¶ 50} Both the separation agreement and the divorce decree state that the court's jurisdiction shall terminate after its determination of spousal support. The court's August 18, 2006 judgment determining spousal support, however, states that its decision is "subject to further order of the Court." Because the parties agreed that the court's jurisdiction would terminate after its determination of spousal support, the court erred as a matter of law in stating in its August 18, 2006 judgment entry that it retained jurisdiction.
 {¶ 51} Therefore, Burns' fifth assignment of error is sustained, and the case is remanded for correction of the August 18, 2006 judgment entry. Judgment affirmed in part; reversed in part and remanded for correction of entry.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 15 
 COLLEEN CONWAY COONEY, P.J., and ANTHONY O. CALABRESE, JR., J., CONCUR *Page 1