OPINION
Plaintiff-appellant Joe Neville appeals from the September 26, 2001, Judgment Entry of the Holmes County Court of Common Pleas adopting the Magistrate's Decision/Decree of Divorce.
 STATEMENT OF THE FACTS AND CASE
Appellant Joe Neville and appellee Judi Neville were married on February 4, 1972. On September 20, 2000, appellant filed a Complaint for Divorce against appellee in the Holmes County Court of Common Pleas. At the time the Complaint was filed, only one of the couple's four children, who was born on April 7, 1983, remained a minor. Appellee filed an Answer and Counter Complaint on October 6, 2000 and an amended answer on December 28, 2000.
A final hearing before a Magistrate was held on May 17, 2001.[1] At the hearing, the parties stipulated that they should be granted a divorce on the grounds of incompatibility. Thereafter, as memorialized in a Magistrate's Decision/Decree of Divorce filed on June 13, 2001, the Magistrate recommended that the parties be granted a divorce on the ground of incompatibility. The Magistrate, in his decision, also recommended that the assets of the parties should be allocated as follows:
 Each party to be awarded 50% of appellant's vested benefit in appellant's Mutual Service Corporation IRA valued as of May 17, 2001. As of July 31, 2000, the fair market value of the IRA was $73,262.23.
 Each party to be awarded 50% of appellant's vested benefit in appellant's Scudder 401(K) account valued as of May 17, 2001. As of December 31, 2000, the Scudder 401(K) was worth $2,991.25.
 Each party to be awarded 50% of appellant's vested benefit in appellant's Morton Building Employees Stock ESOP account valued as of May 17, 2001. As of December 31, 2000, the account was valued at $21,036.16.
 Appellant to be awarded all right, title and interest in appellant's Jackson Life Annuity, which was valued at $19,570.02 as of December 31, 2000.
The Magistrate further recommended that appellee be granted the $43,000.00 equity in the marital residence, personal property valued at $1,500.00 and a car valued at $3,500.00 and that appellant be awarded a car that the Magistrate found was of "minimal value." The Magistrate, in his decision, also recommended that the liabilities of the parties should be allocated as follows:
LIABILITIES
 Appellant Appellee
Loan(mother) 1,500.00 Attorney Fees 9,900.00
Attorney Fees 3,500.00 Pension Evaluators 400.00
 Plus Student Loan 22,000.00 Family Loan (Joyce Haudenchild) 1,400.00
 Art Poulson 200.00 Loan (appraisal fee) (Uncle's Debt-Dodge) 4,500.00
Total Debts $27,200.00 Total Debts $16,200.00
(Appellant) (Appellee)
In addition, the Magistrate, in his decision, recommended that appellant be ordered to pay spousal support to appellee in the amount of $2,000.00 per month "until further order of the Court" and that appellant purchase a life insurance policy that will, upon his death, pay appellee at least $25,000.00 if appellant's death occurs prior to the time that the spousal support order is terminated.
Both appellee and appellant filed objections to the Magistrate's Decision. As memorialized in a Judgment Entry filed on September 26, 2001, the trial court denied the parties' objections and adopted the Magistrate's Decision/Decree of Divorce as the final order of the court. The trial court, in its Judgment Entry, stated that "[t]he award of spousal support and division of property, while unequal, is nonetheless equitable given the facts of the case".
It is from the trial court's September 26, 2001, Judgment Entry that appellant now appeals, raising the following assignments of error:
 I. THE TRIAL COURT'S DECISION PROVIDING FOR AN UNEQUAL DIVISION OF MARITAL PROPERTY AND AN UNEQUAL ALLOCATION OF DEBT IS CONTRARY TO LAW AND CONSTITUTES AN ABUSE OF DISCRETION.
 II. THE TRIAL COURT'S CONSIDERATION OF THE DISPARITY IN SOCIAL SECURITY BENEFITS OF THE PARTIES AND ITS IMPACT ON THE DIVISION OF PROPERTY AND DEBT IS CONTRARY TO LAW.
 III. THE TRIAL COURT'S ORDER DENYING APPELLANT'S OBJECTIONS UTILIZED THE INCORRECT STANDARD OF REVIEW AND IS CONTRARY TO LAW.
 IV. THE TRIAL COURT'S DECISION ESTABLISHING A SPOUSAL SUPPORT AWARD IN THE SUM OF $2,000 PER MONTH FOR AN INDEFINITE PERIOD OF TIME CONSTITUTES AN ABUSE OF DISCRETION.
 THE TRIAL COURT'S DECISION ESTABLISHING A SPOUSAL SUPPORT ORDER IN THE SUM OF $2,000 PER MONTH IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 THE TRIAL COURT'S DECISION IS CONTRARY TO LAW IN THAT IT ESTABLISHES A SPOUSAL SUPPORT AWARD OF INDEFINITE DURATION THAT DISCOURAGES SELF SUFFICIENCY ON THE PART OF THE APPELLEE.
Any other facts relative to our discussion of the assignments of error shall be contained therein.
 I, II
Appellant, in his first two assignments of error, challenges the trial court's division of marital property. Appellant specifically contends that the trial court's unequal division of marital property and unequal allocation of marital debt are contrary to law and constitute an abuse of discretion and that the trial court improperly considered the disparity of social security benefits of the parties and its impact on the property division.
Initially, we note that we generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
R.C. 3105.171 explains a trial court's obligation when dividing marital property in divorce proceedings as follows:
 (C)(1) Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.
See also Cherry, supra., at 355. Throughout this analysis, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets. Briganti v. Briganti (1984), 9 Ohio St.3d 220, 222. Equity is the guidepost in dividing the marital assets of the parties in a divorce action. Zimmie v. Zimmie (1984), 11 Ohio St.3d 94.
As an initial matter, appellant contends, in his first assignment of error, that the trial court's "Decision and Order does not set forth a basis for its division of property and debt order in sufficient detail so as to permit a meaningful review on appeal." In short, appellant maintains that the trial court failed to make written findings of fact as required by R.C. 3105.171(G)[2] to support its determination that the marital property has been divided equitably. We, however, disagree. In allocating property between the parties to a divorce, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law. Kaechele v. Kaechele (988) 35 Ohio St.3d 93,97. The Magistrate's Decision/Decree, which was adopted by the trial court, contains sufficient detailed findings of fact and conclusions of law to enable this Court to conduct a meaningful review. We further find, contrary to appellant's argument that the Magistrate, in his Decision/Decree, considered the factors set forth in R.C. 3105.171(F) in determining how the marital property should be distributed.
As is stated above, appellant challenges the trial court's unequal division of the parties' marital assets which according to appellant, "leaves Appellee with a combined advantage in the division of assets and debt in the minimum sum of $41,000." At the hearing before the Magistrate, testimony was adduced that the present value of appellant's social security benefits was $94,794.30, assuming that appellant retires at age 62, whereas the present value appellee's social security benefits, assuming that she retires at age 62, was $50,326.49. Thus, there is a $44,467.81 difference in the present value of the parties' social security benefits. The Magistrate, in his Decision that was adopted by the trial court, stated, in part, as follows:
 "In divorce proceedings, a trial court must equitably divide the parties' marital property. R.C. 3105.171(B). The Court has made what it considers to be an equitable division of property herein. In essence, the division of property herein awards Judi [appellee] the equity in the marital residence to offset Joe's [appellant's] greater social security benefits, awards Joe the Jackson National Life Annuity in its entirety because counsel were not sure it could be divided by a court order, and makes Joe solely responsible for the Plus Student Loan to offset the Jackson National Life Annuity. All of the other retirement investments were divided equally, and the relatively inconsequential personal property and unsecured debt was divided in a manner the Court deemed equitable."
Thus, the trial court justified the unequal division of marital property by considering the disparity in the parties' social security benefits.
However, as held by this Court in Thomas v. Thomas (Dec. 20, 1993), Stark App. No. CA 9346, unreported, social security benefits are not a marital asset subject to division. This Court, in Black v. Black (Nov. 4, 1996), Stark App. No. 1996CA00052, unreported, discussed the holding in Thomas as follows:
 We clarified this holding in Dockus v. Dockus
(Apr. 8, 1996), Stark App. No. 1995CA00252, unreported, wherein we stated that it is appropriate for a trial court to consider social security benefits when equitably allocating pension benefits.
 Today we take this opportunity to further explain how such benefits are to be considered by the trial court. As in Dockus, we do this by referring to the case of Smith v. Smith (1993), 91 Ohio App.3d 248. We begin by noting that social security benefits are "retirement benefits" pursuant to R.C. 3105.171. Smith at 255. Therefore, the only relevancy social security benefits have in the division of marital property is in the equitable division of retirement benefits. Id.
 However, in valuing social security benefits, it is improper to directly offset the present value of one party's pension benefit by the present-day value of the opposing party's social security benefits. Id. The proper method to determine the impact of social security benefits is to determine the monthly benefit the social security recipient will receive upon retirement. Id.
 In applying this law to the case sub judice, an equitable division of pension benefits can be accomplished by offsetting both parties potential social security monthly benefits against appellant's potential monthly benefit from the police and firemen's pension plan and equitably apportioning the balance of the police and firemen's pension plan between the parties.
 Such an approach prohibits the trial court from dividing social security benefits as a marital asset, which is prohibited by Thomas, but permits the trial court to consider social security benefits when equitably allocating pension benefits, as permitted in Dockus.
(Emphasis added).
Based on the foregoing, we find that the trial court was prohibited from considering the disparity between the parties' social security benefits in awarding appellee the equity in the marital residence to offset appellant's greater social security benefits. The formula set forth in the Black case only works if the party's pension, which is being offset by the party's social security, is a defined benefit type pension. The pensions involved in the case sub judice may be defined contribution plans. The trial court can determine on remand if the Black
formula is applicable.
Based on the trial court's retention of jurisdiction to modify spousal support, (which we uphold in our decision regarding the sixth assignment of error), the possible inability to compensate the appellee in some way from the property division for the appellant's greater social security benefits may not be as inequitable as it first seems. In its property division the trial court considered the disparity between the party's social security benefits to be "in essence" property to be offset by the appellee getting the equity in the marital residence. Once this disparity had been treated as property, it should not later be considered as income when the parties are retired and the issue of modification of spousal support comes before the trial court. In other words, once the appellee has received a greater portion of the marital property to offset appellant's greater social security benefits, the appellee cannot then also look to the difference in social security benefits to be included in appellant's income for purposes of determining spousal support. (The same rationale applies to the other types of pensions. If the trial court divides them as property between the parties, it should not later use the monthly distribution for spousal support determinations between the same parties.) On the other hand, if the social security benefit disparity is not considered in the property division, those amounts can be considered by the trial court as income when it comes time to determine if spousal support should be modified.
Appellant's first and second assignments of error are, therefore, sustained.[3]
 III
Appellant, in his third assignment of error, argues that the trial court's order denying appellant's objections to the Magistrate's Decision utilized the wrong standard of review. According to appellant, "it is obvious that the trial court deferred to the Decision of its Magistrate to a degree ordinarily associated with an Appellate Review Standard and incompatible with the de novo review of the objections to a Magistrate's Decision that Civil Rule 53(E)(4)(b) requires the Court to perform".
Civ. Rule 53(E)(4)(b) states as follows:
 Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
The trial court conducts a de novo review of the facts and conclusions in the magistrate's report before entering its own judgement. DeSantis v.Soller (1990), 70 Ohio App.3d 226, 232.
The trial court, in its September 26, 2001, Judgment Entry, adopting the Magistrate's Decision, stated, in relevant part, as follows:
 The Court has reviewed the Magistrate's Decision, the parties' objections and briefs, and a transcript of the trial before the Magistrate.
 The Court finds that all objections are hereby overruled and that the Magistrate's Decision/Decree of Divorce is consistent with Ohio law and is supported by the record. The award of spousal support and division of property, while unequal, is nonetheless equitable given the facts of the case.
Since there is nothing that appears affirmatively from the record to indicate that the trial court did not apply the appropriate standard for review, we must presume that the trial court applied the law correctly. See State, ex rel. Delph, v. Greenfield (1991), 71 Ohio App.3d 251, 259
and State v. Coombs (1985), 18 Ohio St.3d 123, 125.
Appellant's third assignment of error is, therefore, overruled.
 IV, V, VI
Appellant, in his fourth, fifth and sixth assignments of error, challenges the trial court's decision awarding appellee spousal support in the amount of $2,000.00 per month for an indefinite period. Appellant specifically contends that the trial court's decision constitutes an abuse of discretion, is against the manifest weight of the evidence, and is contrary to law since it discourages appellee from becoming self-sufficient.
A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. See Kunkle v. Kunkle (1990),51 Ohio St.3d 64, 67 and Carnahan v. Carnahan (1997), 118 Ohio App.3d 393,399. A trial court abuses its discretion when, in addition to making an error of law or judgment, it acts with an unreasonable, arbitrary, or unconscionable attitude. See Blakemore, supra. The factors that trial courts are to consider in determining whether spousal support is "appropriate and reasonable", and in determining the nature, amount, and terms of payment and duration are delineated in R.C. 3105.18(C)(1). These factors are:
 (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
(b) The relative earning abilities of the parties;
 (c) The ages and the physical, mental, and emotional conditions of the parties;
(d) The retirement benefits of the parties;
(e) The duration of the marriage;
 (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage;
(h) The relative extent of education of the parties;
 (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
 (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
 (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 (l) The tax consequences, for each party, of an award of spousal support;
 (m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 (n) Any other factor that the court expressly finds to be relevant and equitable.
In the case sub judice, the Magistrate and trial court clearly considered such factors. Evidence was adduced at the hearing before the Magistrate that appellee, who has a high school education, was, during the parties' thirty year marriage, a full-time homemaker and caregiver for the parties' four children. At the time of the hearing, appellee, who was fifty years old, testified that "[w]e discussed that I would stay at home with the kids and he would work". Transcript at 112. During the marriage, appellee reported social security earnings in only five years. In 1972, appellee earned $8.00, in 1984, she earned $2,044.06, in 1985, she earned $1,883.83, in 1996, she earned $171.50 and in 1997, appellee earned $370.37. During direct examination, appellee testified that she worked nights for six months in Holmesville and that she "was trying to do it on a minimal amount of sleep, and we both agreed that I should quit". Transcript at 113. According to appellee, appellant, who frequently worked away from home, did not want her to work. The Magistrate, after noting that appellee's work at home during the parties' marriage enabled appellant to increase his earning ability many times over, imputed income in the amount of $10,700.00 per year to appellee. The Magistrate, in so doing, noted that due to appellee's high school education and "negligible work experience", it was unlikely that appellee would earn more than the minimum wage. The Magistrate further noted that appellee, following the termination of the parties' marriage, would need to procure and pay for health insurance for herself whereas appellant was insured at a nominal cost through work.
In turn, evidence was adduced at the hearing that appellant's adjusted income in 2000 was approximately $59,620.00. In 1997, appellant, who has been employed as a foreman on a construction crew for approximately twenty nine years, earned $54,040.64; in 1998, he earned $61,090.33; and in 1999, he earned $64,308.54. As of March 20, 2001, appellant had year to date earnings of $20,349.61 for the 2001 calendar year and admitted that based upon the same, expected to earn $6,000.00 more in 2001 than in 2000. Transcript at 110. When asked what deductions were withheld from his gross pay, appellant responded as follows:
 A. Group life insurance $47.50; term insurance $19.12; the retirement is Jackson is, it has to do with the amount of the pay check, this one shows $24.41 for Jackson, $8.14 for Scudder. I've got a payroll savings plan $14.55. That is also like a disability plan. What is the approximate amount, if there is one, that is withheld from your wages that goes, that is results in direct contributions to either Scudder, the ESOP or the other retirement account of yours? Approximately speaking per pay period?
Probably a hundred dollars, or close.
Transcript at 63.
At the hearing before the Magistrate, appellant also submitted the following list of his monthly expenses as Exhibit 5:
 Joe E. Neville v. Judi K. Neville Expenses Pertaining to Residence of Joe Neville
Rent (Living with mother) 0
Utilities and Miscellaneous Items $300.00/month
Groceries ($50.00 per week) 217.00/month
Motor Vehicle Gas ($30.00/week) 130.00/month
 Car Insurance (Includes Plaintiff and Defendant's car and son's car) 100.00/month
At the hearing, appellant further testified that his current living expenses were about $747.00 per month while appellant was living with his mother. Transcript at 105. Part of the $100.00 for car insurance included insurance on appellee's car.
Appellant, in his brief, contends that the trial court's award of spousal support in the amount of $2,000.00 per month leaves appellant operating under a negative cash flow. Appellant, in support of his argument, references the following chart in his brief:
W-2 Income $59,620.64
1. Actual tax withholding.
a. Federal Tax 6,957.55
b. Social Security 3,696.49
c. Medicare Tax 854.49
d. Ohio Income Tax 2,146.37
Total Tax Withholding
13,664.90
Net Pay After Deducting Taxes $ 45,955.74
2. Spousal Support Pursuant to Court Order
 $24,000.00 per year plus poundage of 2% $ 24,480.00
(54% of net income after taxes)
Net income remaining after deducting taxes and
Spousal Support pursuant to Court Order: $21,475.74
3. Additional Required Deductions from payroll:
 a. Life Insurance Court Ordered ($19.12 x 52) 994.24
 b. Disability Insurance ($14.55 x 52) 756.60
 c. Hospitalization Insurance ($47.50 x 52) 2,470.00
 d. 401K (Scudder and Jackson Life) ($32.55 x 12) 1,692.60
 Total Additional Current Payroll Deductions: 5,913.44
 Net Income Remaining After All Existing Payroll
 Deductions Plus Spousal Support Pursuant to Court
Order and Poundage $ 15,562.30
Additional Required Expenses:
Plus loan — $22,000.00 — 10 year amortization at 7%
= $255.44 per month x 12 3,065.28
Groceries (Appellant's Trial Ex. 5 and 6) 2,600.00
$50 per week x 52
 Motor Vehicle Gas — $30.00 per week x 52 1,516.00
Car Insurance 500.00
 Electric, Gas, Water and Trash — $200.00 per month x 12 2,400.00
Telephone — $40.00 per month 480.00
Clothing — $50.00 per month 600.00
Car repairs — $50.00 per month x 12 600.00
Rent — $400.00 per month x 12 4,800.00
 Net Income Remaining After Required Deductions $ -1042.98
However, as appellee notes in her brief, in the above chart, appellant understates his income. While, as is stated above, appellant, in 2000, earned $59,620.00, in the two previous years he earned $64,308.54 (1999) and $61,090.33 (1998). At the hearing, appellant conceded that based upon his year-to-date earnings for 2001, he expected to earn $6,000.00 more in 2001 than in 2000 or $65,620.00[4]. The Magistrate, in his decision, specifically found that appellant "remains capable of earning $64,000.00 per year, as he did in 1999." In addition, the tax implications are overstated in the above chart since appellant does not account for the tax deductibility of spousal support. Spousal support is taxable income to appellee and tax deductible by appellant. See Frostv. Frost (1992), 84 Ohio App.3d 699. Such amount clearly will offset appellant's alleged negative cash flow. In addition, some of appellant's "required" deductions from payroll (namely, deductions for group and term insurance and for appellant's 401K) are voluntary deductions rather than "required" deductions. See Appellant's Exhibit 3.
Upon our review of the record, we find that the trial court did not abuse its discretion in awarding appellee $2,000.00 per month in spousal support for an indefinite period of time since such decision was not arbitrary, unconscionable or unreasonable. The case sub judice involved a marriage of long duration (30 years) and a homemaker-spouse with little opportunity to develop meaningful employment outside the home. SeeKunkle, supra. As noted by the Magistrate in his decision, "[b]y virtue of her marital responsibilities as a full-time caregiver to her children and homemaker for her family, Judi Neville sacrificed thirty years of earning potential for her family. Without sufficient spousal support, she faces a grim financial future given her minimal job skills and mere twelve to fifteen years until retirement."
Furthermore, we disagree with appellant that the trial court's award of spousal support of indefinite duration is contrary to law since it discourages self-sufficiency on the part of appellee, who as is stated above, was 50 years old as of the hearing. In short, we find that the trial court did not abuse its discretion in failing to set a specific termination date. In Kunkle v. Kunkle, (1990) 51 Ohio St.3d 64, 69 the Ohio Supreme Court held that "except in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home, where a payee spouse has the resources, ability and potential to be self-supporting, an award of sustenance alimony should provide for the termination of the award, within a reasonable time and upon a date certain, in order to place a definitive limit upon the parties' rights and responsibilities."
As noted above, during the parties' thirty year marriage, appellee was employed only intermittently outside the home and spent the vast majority of her time at home caring for the parties' children. While, during the hearing, appellee testified that she was considering going to beauty school, she testified that she was undecided since her niece told her "it takes two years to build up your clientele, and you would be lucky to make $10,000 a year, . . ." Appellee also voiced concerns over the $6,000.00 tuition costs. In addition, as is stated above, appellee, who only has a high school education, will probably never earn more than minimum wage in contrast to appellant, who earns in excess of $60,000.00. Transcript at 139. In short, we find that due to the parties' marriage of long duration and the fact that appellee is a "homemaker-spouse with little opportunity to develop employment outside the home," an indefinite award of spousal support is warranted. SeeKunkle, supra., at 69. Moreover, we note that the trial court expressly retained jurisdiction to modify the award of spousal support upon a change of circumstances. See Shoemaker v. Shoemaker (Dec. 15, 2000), Knox App. No. 00CA13, unreported.
Appellant's fourth, fifth and sixth assignments of error are, therefore, overruled.
Accordingly, the judgment of the Holmes County Court of Common Pleas is affirmed in part and reversed and remanded in part.
By EDWARDS, J. HOFFMAN, P.J. concurs separately WISE, J. concurs
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Holmes County Court of Common Pleas is affirmed in part and reversed and remanded in part. Appellant is to pay 67% of costs and appellee is to pay 33% of the costs.
[1] By the time of the hearing, all four children were emancipated.
[2] R.C. 3105.171(G) states that "[i]n any order for the division or disbursement of property. . . . the court shall make written findings of fact that support the determination that the marital property has been equitably divided. . . ."
[3] We note that upon re-evaluation of the property division award, the trial court may need to re-evaluate its spousal support award since R.C. 3108.171(C)(3) provides that the court shall provide for an equitable division of marital property prior to making any spousal support award.Young v. Young (2001), 146 Ohio App.3d 34, 38.
[4] Such sum is arrived at by adding $6,000.00 to $59,620.00, appellant's 2000 income.